[Crim. No. 921. Second Appellate District, Division Two.—August 29, 1923.]

THE PEOPLE, Respondent, v. W. L. BARNARD et al., Appellants.

[1] CRIMINAL LAW — INDICTMENT—PLEADING — LARCENY — OBTAINING MONEY BY FALSE PRETENSES—STATEMENT OF VALUE.—Where the punishment of a crime, as in the case of larceny or the obtaining of money or property by false pretenses, is made to depend upon the value of the money or property taken or obtained, the value must be stated in the indictment.

[2] ID.—CONSPIRACY — PLEADING —INDICTMENT —UNCERTAINTIES.—An indictment for conspiracy is uncertain where it contains matter tending toward a charge of the commission of several offenses, and presents that matter in such a manner as that the defendants are not advised that they are accused of the commission of any single and particular offense, and where, if the charge be regarded as one denouncing a conspiracy to obtain money by the commission of the crime of obtaining money by false pretenses, it cannot be ascertained from its language whether the defendants are sought to be charged with a conspiracy punishable under the first or under the second scheme of punishment provided by section 182 of the Penal Code.

[3] ID.—CONSPIRACY—PLEADING.—Indictments under section 182 of the Penal Code must be so framed as to point out the separate offense which persons are charged with conspiring to commit.

APPEAL from judgments of the Superior Court of Los Angeles County and from orders denying new trials. Frederick W. Houser, Judge. Reversed.

---

1. Necessity of alleging value in indictment for larceny, note, 2 Ann. Cas. 857.

The facts are stated in the opinion of the court.

Daly & Byrne and S. A. Carpenter for Appellant Dunn.

Ford & Bodkin for Appellant Barnard.

B. Rey Schauer for Appellant Dennison.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

WORKS, J.—This cause was prosecuted under an indictment by the grand jury for conspiracy. The action was never tried as to defendant Cook and was dismissed as to defendants Breitkreutz and Cullen. The jury disagreed as to the guilt or innocence of defendant Tune, and defendants Currier and M. C. Barnard were acquitted. Defendants Dunn, Dennison, and W. L. Barnard were convicted and each appeals from the judgment of conviction. There is also an appeal from each of the orders denying the respective motions of the convicted defendants for a new trial.

The portion of the indictment alleging the formation of the conspiracy, with immaterial matters indicated by ellipses, is in the following language:

"The defendants . . . are accused by the grand jury . . . of the crime of conspiracy to commit a felony committed . . . as follows, to wit:

"That . . . the said defendants did willfully, unlawfully, fraudulently, feloniously and corruptly conspire, combine, confederate and agree together and each with the other that they would procure the charter of a corporation known as the Los Angeles & Kern River Improvement Company and all of the stock of said corporation which said corporation was then and there wholly insolvent and change the name of said corporation to the Huntington-Hawthorne Oil & Gas Company and change the par value of the stock of the said Los Angeles & Kern River Improvement Company from One Dollar ($1.00) per share to Ten Cents (10) per share, and change the number of shares of said corporation from Five Hundred Thousand (500,000) to Five Million (5,000,000) shares and to represent and pretend to the pub-

lic to whom they then and there and thereafter were intending to offer stock for sale that the said Los Angeles & Kern River Improvement Company was then and there possessed of and owned assets and bills receivable in the sum of One Hundred and Fifty Thousand Dollars ($150,000.00), and that by reason of the said Los Angeles & Kern River Improvement Company owning the said assets of One Hundred and Fifty Thousand Dollars ($150,000.00), the same would be used by its successor, the Huntington-Hawthorne Oil & Gas Company for the drilling of oil wells, one of which was to be drilled upon certain oil leases near the town of Moneta . . . and the other on an oil lease at and near the town of Hawthorne . . . , both of the said leases being the property of the Huntington-Hawthorne Consolidated Oil Company, an unincorporated association theretofore organized and controlled by the said defendants. The rights and interests in and to said leases and the properties of the said Huntington-Hawthorne Consolidated Oil Company was divided into Two Million Five Hundred Thousand (2,500,000) units, about Two Million (2,000,000) of which said units had theretofore been sold and issued . . . ; that the said Two Million (2,000,000) units so theretofore issued were to be received from unit holders or owners presenting them and were to be received and the stock of the corporation issued therefor on the basis of One (1) share of stock of the corporation known as the Huntington-Hawthorne Oil & Gas Company of the par value of Ten (10) cents for each unit held by unit holders in the Huntington-Hawthorne Consolidated Oil Company so presented and offered to be converted into such corporation stock and that the trustee for the benefit of the said unit holders and then and there one William F. Welling, who was then and there under the domination and control of the defendants, W. L. Barnard and Joseph V. Cullen, would assign and set over to the said Huntington-Hawthorne Oil & Gas Company all of the leases, properties and rights of the said Huntington-Hawthorne Consolidated Oil Company and the unit holders holding units of ownership in and to said Huntington-Hawthorne Consolidated Oil Company to the said Huntington-Hawthorne Oil & Gas Company, and that as a consideration for the said assignment, the said defendants would, as a part of said agreement and plan to defraud the public and to

defraud the unit holders theretofore purchasing units in the Huntington-Hawthorne Consolidated Oil Company, set aside and directed [*sic*] that One Million (1,000,000) shares of said stock would be set aside for delivery to such unit holders who presented their units in the Huntington-Hawthorne Consolidated Oil Company for conversion into the stock of the Huntington-Hawthorne Oil & Gas Company, and further that they, the said defendants, as a part of the said conspiracy, scheme and plan so entered into and agreed upon by the said defendants as aforesaid, willfully and feloniously, corruptly and fraudulently then and there agreed as a part of the said scheme and plan to procure one L. H. Scott, who was then and there wholly insolvent, to execute and deliver to the said defendants Thirteen (13) promissory notes of the aggregate face value of One Hundred and Fifty Thousand Dollars ($150,000.00), three (3) of said notes being for the sum of Twenty-five Thousand Dollars ($25,000.00) each, being dated March 19th, 1921, and Six (6) of said notes being dated March 26th, 1921, four (4) of which being for the apparent face value of Ten Thousand Dollars ($10,000.00) each, two (2) of the apparent face value of Five Thousand Dollars ($5,000.00) each, and four (4) of said notes being dated March 29th, 1921, three (3) of which were for the face value of Five Thousand Dollars ($5,000.00) each and One (1) of the face value of Ten Thousand Dollars ($10,000.00), all and each of said notes being signed by the said L. H. Scott, and upon the understanding and agreement with the said L. H. Scott that he would not be held responsible for the payment of said notes, nor would he be expected to pay them, and that the said defendants and agents employed by them would represent and pretend to the public and the unit holders of the Huntington-Hawthorne Consolidated Oil Company that the said Huntington-Hawthorne Oil & Gas Company then and there was financed and had money on hand sufficient to drill a well upon the property and leases heretofore mentioned at Moneta, . . . and to drill and complete an oil well upon the lease heretofore mentioned near the town of Hawthorne . . . , and with the intent upon their part to deceive the State Corporation Commissioner of the State of California having supervision of the sale of corporate securities in the State of California and brokers selling such

securities, to deceive the said Corporation Commissioner
into believing that the said Huntington-Hawthorne Oil &
Gas Company was a solvent corporation and were then
and there able to carry out its contracts and representations
made to the public, and as a part of said common plan,
scheme and conspiracy aforesaid and to deceive those of the
public inquiring as to the assets of the corporation and said
defendants agreed and entered it upon the minutes of the
said corporation that the said payment of the notes ag-
gregating One Hundred and Fifty Thousand Dollars
($150,000.00) was secured by certain collateral security, to
wit, Three Million (3,000,000) shares of the capital stock
of the Huntington-Hawthorne Oil & Gas Company; it was
further agreed as a part of said common scheme and plan
that One Million (1,000,000) shares of the capital stock
of said corporation should be divided up among the said
defendants without payment upon their part, and that the
said defendants should sell the stock of said Huntington-
Hawthorne Oil & Gas Company, and that where the stock
of said corporation which was represented to be attached
as collateral security was sold for money that five (5)
cents only of the sums which said stock was sold for would
go for the benefit of the corporation, and the balance would
be taken by the said defendants for their own use and
benefit, and it was then and there a part of said common
scheme and plan as aforesaid that only such stock for the
benefit of such corporation would be sold as would be re-
quired by the said defendants to pay the expenses of adver-
tising and sale of said stock, and such other sums as the
said defendants might consider would be an appropriate
charge against the corporation.''

The enactment which in this state denounces the crime
of conspiracy, section 182 of the Penal Code, as amended
by Stats. 1919, page 171, provides in part: ''If two or more
persons conspire: 1. To commit any crime; . . . 4. To cheat
and defraud any person of any property, by any means
which are in themselves criminal, or to obtain money or
property by false pretenses or by false promises with fraudu-
lent intent not to perform such promises; . . . They are
punishable as follows: When they conspire to commit any
felony, . . . they shall be punishable in the same manner
and to the same extent as in this code provided for the

punishment of the commission of the said felony. . . .
When they conspire to do any of the other acts described
in this section they shall be punishable by imprisonment in
the county jail or state penitentiary not exceeding two years,
or by a fine not exceeding five thousand dollars. . . . ''

Appellants make the contention that the indictment does
not state a public offense with that certainty which is
requisite to the validity of a true bill found by the grand
jury. More specifically, the point made is that the indict-
ment attempts to state several offenses, with the result that
the persons indicted are not by its language apprised of the
fact that they are charged with any particular one. The
indictment was demurred to, not only on the general ground,
but on the ground of uncertainty as well. Appellants, or
at least some one of them, see in the indictment an attempt
to charge them with each of the following crimes: First, a
conspiracy to obtain money and property by and through
the commission of the crime of obtaining money or property
by false pretenses, which latter crime is defined by Penal
Code, section 532; second, a conspiracy to obtain money
''by false promises with fraudulent intent not to perform
such promises,'' an offense denounced by Penal Code, sec-
tion 182, subdivision 4; third, a conspiracy to commit a
fraud by and through the keeping of false accounts in
the books of a corporation, the commission of such a fraud
being made a crime by Penal Code, section 563; fourth, a
conspiracy to procure the payment of cash or the delivery
of personal property by and through the making of a false
statement respecting the financial condition of a corpora-
tion, a crime defined by Penal Code, section 532a (2), sub-
division 1; fifth, a conspiracy to make a false report or
statement of the affairs or pecuniary condition of a corpora-
tion, such report or statement having a tendency to affect
the apparent value of its shares of stock, the making of
such reports or statements being declared a crime by Penal
Code, section 564; and sixth, a conspiracy to deceive the
corporation commissioner by the filing, pursuant to the pro-
visions of section 8 of the Corporate Securities Act (Stats.
1917, p. 673; Deering's Consol. Supp. to Gen. Laws, 1917-21,
p. 1447), of a false statement of the securities sold by a
corporation. To this list of apparent charges respondent
adds a seventh. The attorney-general defends the indict-

ment upon the theory that it charges a conspiracy to obtain money and property by false pretenses not amounting to a complete commission of the crime of obtaining money or property by false pretenses.

It is evident from a casual examination of the indictment that it contains allegations tending toward a charge of the commission of each of the seven crimes tabulated above, some of those allegations going but a little distance toward a complete charge, others proceeding to greater lengths. These circumstances place before us, as a question for our consideration: Is the indictment so uncertain that it did not apprise the persons charged that they were to be tried for the commission of any single and particular crime?

In making answer to this question it is interesting to note the view of the indictment entertained in the trial court, by both the district attorney and the trial judge, as contrasted with that advanced by the attorney-general on this appeal and already mentioned. At the request of the district attorney the jury was told, in an instruction which we shall designate as A, that the defendants were charged "with criminal conspiracy, a felony," and that "the particular offense charged against the defendants is a violation of section 182 of the Penal Code, as amended in 1919, . . . , which provides in part as follows: . . . (1) If two or more persons conspire to commit any crime . . . (4) to cheat and defraud any person of any property by any means which are in themselves criminal, or to obtain money or property by false pretenses, or by false promises with a fraudulent intent not to perform such promises, they shall be punished in the same manner and to the same extent as in this Code provided for the commission of the said felony or act respectively." In an instruction which we shall term B, also given at the request of the district attorney, the jury was informed that the indictment "charges that the defendants . . . entered into a conspiracy to obtain money and property from the persons to whom they were then offering stock of the Huntington-Hawthorne Oil & Gas Company, and from persons whom they were thereafter intending to offer stock of such corporation for sale, and as a part of said conspiracy to procure one L. H. Scott to sign certain papers in the form of notes and to use such papers as pretended assets of the Huntington-Hawthorne Oil & Gas Company,

and to enter a record of said notes in the records of the company as an asset of said company, and to falsely represent to the public and the unit holders of the previously organized Huntington-Hawthorne Consolidated Oil & Gas Company that the said Huntington-Hawthorne Oil & Gas Company was financed and had money on hand sufficient to drill oil wells upon a lease at or near the town of Moneta, and a second well at or near the town of Hawthorne, . . . which was and would be false, and also by reason of the said financial condition of the said company to falsely pretend to brokers selling the stock of the Huntington-Hawthorne Oil & Gas Company and to the State Corporation Commissioner of California, that the said Huntington-Hawthorne Oil & Gas Company was solvent and able to carry out its contracts and representations made to the public; and as a part of said plan conspired to knowingly make and publish a certain false written report and statement of its financial affairs and pecuniary conditions that it owned and controlled a large amount of assets, having a tendency to give the shares of the stock of said corporation a greater value than they really possessed; . . . '' In another instruction, which we shall call C, which was requested by the defendants, the jury was charged ''that no evidence has been introduced showing that the Huntington-Hawthorne Oil & Gas Company was ever authorized by the Corporation Commissioner to sell securities; and you are further instructed that said corporation was not subject to any examination, audit or investigation made by the Corporation Commissioner, or his authority, and you must acquit the defendants of any charge of conspiracy to file such false statement on behalf of said company.''

It will be observed that these instructions reflect the view that the indictment contained language tending toward a preferment of several of the charges already listed by us under seven numbers, that is to say, those designated by us as the first, second, fourth, fifth, and sixth seen in the indictment by the appellants, and possibly the third also. Of these the first and second are touched by instruction A, the fourth and fifth by instruction B, the sixth by instruction C, and some language in instruction B appears to contemplate the third. It is especially to be observed as to the charges designated first and second that instruction A

paraphrases subdivision 4 of section 182, Penal Code; as to fourth that the provisions of section 532a (2) are in effect given in instruction B; and as to fifth that certain provisions of section 564 are practically reproduced. The views of the trial court as expressed in these instructions argue forcibly the contention of appellants that the indictment is uncertain in the respects pointed out by them.

Appellants insist that there is a further uncertainty, and in effect an insufficiency, in the indictment. Considering the pleading as a charge of conspiracy to obtain money by the commission of the crime of obtaining money by false pretenses—and it appears to us to bear that construction more readily than any other—appellants insist that it is defective in that there is present in it no allegation as to the amount of money which the defendants conspired so to obtain. The importance of this omission is apparent when it is remembered that two separate and distinct schemes of punishment are provided by section 182 of the Penal Code, and that either the one or the other of those schemes applies to the convictions under the indictment now before us, depending upon the question whether the amount of money sought to be "obtained" under the conspiracy was above or below a certain amount. Section 182 provides that when any persons "conspire to commit any felony . . . they shall be punishable in the same manner and to the same extent as in this code provided for the punishment of the commission of the said felony. . . . '' Conspiracies to commit certain other offenses, not of moment in the present inquiry, are to be punished as provided in the language just quoted, along with conspiracies to commit felonies. Then occurs the provision that when persons conspire "to do any of the other acts described in this section they shall be punishable by imprisonment in the county jail or state penitentiary not exceeding two years, or by a fine not exceeding five thousand dollars, or both, . . . '' Section 532 of the Penal Code lays the same punishment for the crime of obtaining money by false pretenses as is provided for larceny by sections 489 and 490. Under the former of these two sections grand larceny, the taking of property of the value of more than fifty dollars, is punishable by imprisonment in the state prison for not less than one nor more than ten years. Section 490 prescribes the punish-

ment for petit larceny as a fine not exceeding five hundred
dollars or by imprisonment in the county jail not exceeding
six months, or both. Because of the provisions of sections
532 and 489 the crime of obtaining money by false pre-
tenses is a felony if the amount "obtained" is more than
fifty dollars, for under the terms of section 17 of the Penal
Code an offense punishable by imprisonment in the state
prison is a crime of that grade. It is plain, then, as already
indicated, that if the defendants in the present action con-
spired to obtain by false pretenses money of the value of
more than fifty dollars they are punishable under the first
scheme provided by section 182, while if they conspired to
obtain that amount, or less, they are punishable under the
second. There is thus shown a patent uncertainty or de-
fect in the indictment if it be considered as a charge of
conspiracy to obtain money by the commission of the crime
of obtaining money by false pretenses. [1] Where the
punishment of a crime, as in the case of larceny or the
obtaining of money or property by false pretenses, is made
to depend upon the value of the money or property taken
or obtained, the value must be stated in the indictment
(*Woodring* v. *Territory*, 2 Ann. Cas. 857, note; 25 Cyc. 85;
25 C. J. 634).

[2] We cannot avoid the conclusion that the indictment
now before us is uncertain in two respects: First, in that it
contains matter tending toward a charge of the commission
of several offenses, and presents that matter in such man-
ner as that the defendants were not advised that they were
accused of the commission of any single and particular of-
fense; second, that, if the charge be regarded as one de-
nouncing a conspiracy to obtain money by the commission
of the crime of obtaining money by false pretenses, the in-
dictment is uncertain and defective in that it cannot be
ascertained from its language whether the defendants are
sought to be charged with a conspiracy punishable under
the first or under the second scheme of punishment pro-
vided by section 182 of the Penal Code.

In defending against the points made by appellants, the
attorney-general advances a variety of arguments which do
not apply under section 182 in its present form, granting
that those arguments would be conclusive if the section now
stood as it did prior to the amendment of 1919. The old

section was so framed as to denounce the crime of criminal conspiracy in general. The present section, as a reading of it will indicate, is of an utterly different import. [3] The enactment now denounces the crime of conspiracy to commit particular offenses, and indictments under it must be so framed as to point out the separate offense which persons are charged with conspiring to commit. We do not decide that, if parties conspire to commit several distinct crimes, they may not be charged under separate counts equal in number to the number of crimes contemplated by them, pursuant to the terms of section 954 of the Penal Code, allowing the inclusion of several counts in indictments and informations. That particular question is left open to future determination.

The judgment as to each of the appellants is reversed. Each order denying the motion of the respective appellants for a new trial is reversed.

Finlayson, P. J., and Craig, J., concurred.