[Crim. No. 1550. Second Appellate District, Division One.—February 4, 1928.]

THE PEOPLE, Respondent, v. GEORGE RICHARD WELCH et al., Appellants.

George E. Stoddard for Appellants.

U. S. Webb, Attorney-General, and John D. Richer and John L. Flynn, Deputies Attorney-General, for Respondent.

HAHN, J., *pro tem.*—Appellants were charged by information filed by the district attorney of Los Angeles County, in count I with the crime of criminal conspiracy; in count II with the crime of assault with a deadly weapon with intent to commit murder; in count III defendant Welch was charged with having in his possession, custody, and under his control, a revolver capable of being concealed on his person, he having been previously convicted of a felony; and in count IV defendant Grace was charged with the same offense which Welch was charged with in count III.

The information was attacked by demurrer upon the following grounds: First, that the court had no jurisdiction of the offense charged; second, that the information does not substantially conform to sections 950, 951, and 952 of the Penal Code; third, that more than one offense is charged in said information, and the information does not conform to section 954 of the Penal Code; and, fourth, that the facts stated in the information do not constitute a public offense.

The demurrer was overruled, and the defendants put upon trial before a jury, which resulted in verdicts of guilty upon each of the counts. The jury also found as true the allegations contained in counts III and IV that each defendant named therein had been previously convicted of a felony.

From the judgment of conviction and the order denying their motion for a new trial the appeal is taken.

Appellants specify three counts upon which they urge a reversal of the judgment. First, that the court erred in overruling their demurrer; second, that the verdicts are contrary to the evidence; third, that the court erred in allowing the introduction in evidence of the testimony of defendant Welch given in a previous trial.

The first point urged involves count I, which, omitting unimportant portions thereof, reads as follows: "The said George R. Welch and Vernon Young Grace are accused by the district attorney of and for the county of Los Angeles, state of California, by this information, of the crime of criminal conspiracy, a felony, to commit the crime

of burglary, a felony, grand larceny, a felony, robbery, a felony, assault with a deadly weapon, a felony, assault with intent to commit murder, a felony, and violating section 2 of Act 1970 [Deering's General Laws, 1923], of the Statutes of 1923 [p. 695], a felony, etc.''

The gist of the criticism laid against this count by the demurrer is that it charges that the conspiracy was formed to commit six separate and distinct crimes, when as a matter of law but one crime may be charged as the object of the alleged conspiracy. The main reason urged in support of this contention is that the statute provides as punishment for the offense of conspiracy to commit a crime the same punishment that is provided for the commission of the crime, and where a count, as in the instant case, charges a conspiracy to commit six different and separate offenses for which crimes different penalties are provided by the statute, there is no measure or method provided by law to determine which penalty to impose.

The first inquiry suggested as we approach a consideration of this question is: What are the essential elements that constitute the offense of criminal conspiracy? For the purposes of the instant case, a criminal conspiracy as denounced by section 182 of the Penal Code may be defined as an agreement between two or more persons to commit a crime. Section 184 of the Penal Code further provides that ''no agreement amounts to a conspiracy, unless some act, beside such an agreement be done within this state to effect the object thereof, by one or more of the parties to the agreement.''

Manifestly, there is nothing indicated in either of these two sections that a charge of criminal conspiracy must be limited to an agreement to commit but one crime. The gravamen of the first element of the offense is the agreeing or conspiring together to commit a crime. It is this element which distinguishes the crime of criminal conspiracy to commit robbery from the crime of robbery itself which involves the overt act. The iniquity of the conspiracy is the corrupt agreeing together of two or more persons to do by concerted action, something unlawful. It may be, and not infrequently happens, that but one or a portion of the number who actually plan the evil design take part in the overt act that accomplishes the intended crime. For-

sooth, the most dangerous members of the conspiracy, without whose malignant hearts and shrewd minds the crime would not have been instigated, are adroit enough to refrain from actual participation in the overt act. Unquestionably, the purpose of the law in making it an offense to conspire to commit a crime is to reach everyone who in any way participated in forming the evil plan irrespective of who or how many carry out the design, and well may this be a protection to society, for a group of evil minds planning and giving support to the commission of crime is more likely to be a menace to society than where one individual alone sets out to violate the law.

It would seem to do violence to reason to hold that, where several persons agreed to rob a bank and as a part of the plan they determined to shoot anyone who resisted or interfered, they may not be charged in one count with criminal conspiracy, because, forsooth, their evil designs contemplated murder as well as robbery. The part of the plan to be armed with loaded revolvers and commit an assault with intent to kill, if need be in carrying out the robbery plan, is just as much a part of the crime which the statute denounces as that part which contemplated the robbery. The fact that neither the actual robbery nor the actual shooting is an essential element in the crime of criminal conspiracy, further emphasizes the fact that the crime of criminal conspiracy consists in the planning and scheming together, and there would seem to be no reason to hold that the charging of a part of the evil plan would properly state a cause of action, when the charging of the entire plan does not state a cause of action.

This view finds support in the case of *People* v. *Mac-Phee*, 26 Cal. App. 220 [146 Pac. 523], where the court says: "It is the first contention of the appellants that the indictment is defective in the fact that it charges the defendants with two crimes, viz., a conspiracy under section 182 of the Penal Code, and also the offense of receiving bribes under section 68 of the Penal Code. We cannot agree with this contention. The indictment is sufficient to charge the offense of a conspiracy to commit or connive at the commission of the several kinds of offenses enumerated in section 182 of the Penal Code; the language of that section is inclusive and elastic enough to permit the framing

of an indictment charging a conspiracy to do or permit the doing of any or all of the illegal acts referred to therein; and the fact that the parties to the conspiracy succeeded in perpetrating the acts of crime or fraud specified in the section, which thus became crimes under those other sections of the code forbidding these specific offenses, would not in any wise relieve the conspirators from their liability under section 182 of the Penal Code. To hold otherwise would be to practically nullify that section by making success in the consummation of its enumerated acts of fraud and crime a defense to the conspiracy by which that success was made possible.''

In the case of *People* v. *Johnson,* 22 Cal. App. 364 [134 Pac. 340], the indictment contained two counts, one charging conspiracy to falsely accuse one Loveland of the crime of issuing checks without sufficient funds, and the second charged a conspiracy to pervert and obstruct justice and the due administration of the law. In discussing the merits of a demurrer filed to the indictment, which was overruled, the court says: ''To do all of the things enumerated in the different subdivisions of section 182 of the Penal Code amounts to a single offense only, and it is quite plain that the district attorney might have joined in one count of his indictment all of the matters which were made the subject of the two counts. That he did choose to separate them and state with more particularity the charge in the way which is exhibited by the indictment did not violate any of the rules of criminal pleading, or any of the specific provisions of section 954 of the Penal Code.''

This line of reasoning finds support in the decision of the United States supreme court in the case of *Frohwerk* v. *United States,* 249 U. S. 204 [63 L. Ed. 561, 39 Sup. Ct. Rep. 249, see, also, Rose's U. S. Notes]. One of the counts of the indictment charged a conspiracy to commit numerous specific acts, each of which constituted a separate offense under the Espionage Act of June 15, 1917 (50 U. S. C. A., sec. 31). In sustaining the ruling of the district court overruling a demurrer filed to the indictment on the ground that the count in question stated a conspiracy to commit a number of offenses, Mr. Justice Holmes, speaking for the court, said: ''Countenance, we believe, has been given by some courts to the notion that a single count in an in-

dictment for conspiring to commit two offenses is bad for duplicity. This court has given it none. . . . The conspiracy is the crime, and that is one, however diverse its objects."

Our supreme court furnishes support for similar conclusions in the case of *People* v. *Gosset,* 93 Cal. 641 [29 Pac. 246], and *People* v. *McClennegen,* 195 Cal. 445 [234 Pac. 191].

Appellants cite the case of *People* v. *Barnard,* 63 Cal. App. 562 [219 Pac. 756], in support of their contention. While there is language in the opinion in that case which is susceptible to a construction that would give aid to appellants' theory, it clearly appears from a reading of that case that facts and matters were there involved and which unquestionably were determinative of the case which do not appear in the instant case. To discuss these points in detail would seem to extend this opinion to undue length, and we deem it sufficient to say the case is readily distinguished from the instant case.

We now come to the point urged that with several crimes specified as the object of the conspiracy, serious difficulty will arise in determining the period of imprisonment that may be fixed as punishment for the crime. But this is a question for the prison board to determine and not the trial court. All of the offenses charged as being the object of the conspiracy are felonies, and the minimum period of incarceration provided for the least serious is one year in a state prison. This determines the place of imprisonment, and to the prison board under our Indeterminate Sentence Law is left the question of determining the extent of sentence. It is quite possible that the query will never become acute for the reason that the prison board may see fit to fix a period of incarceration within the maximum provided for the least serious offense specified as the object of conspiracy, in which event appellants would have no legal cause for complaint.

We are of the opinion that the demurrer was properly overruled.

The next point urged by appellants that "the verdict is contrary to the evidence" relates to count II, which charges the defendants with the crime of assault with a deadly weapon with intent to commit murder.

The offense intended to be charged in this count is undoubtedly that denounced by section 217 of the Penal Code, which declares, "Every person who assaults another with intent to commit murder, is punishable by imprisonment in the state prison not less than one nor more than fourteen years." It will be noted that the information has the added language, "with a deadly weapon," not found in the above-quoted section, but which does constitute a part of the crime defined in section 245 of the Penal Code. However, treating this added language as mere surplusage, there is still charged in the information all the essential elements of the offense defined in section 217 of the Penal Code.

There is evidence in the record tending to establish the following state of facts: Early on the evening of May 29, 1926, in response to a telephone call that three men in a Hudson brougham were seen acting in a suspicious manner in the vicinity of Second and Temple Streets in the city of Long Beach, Officers M. A. Smith and Albert Haas were detailed to round up the suspected trio. As the officers approached a gasoline service station situate on the corner of Temple and Broadway Streets, they observed standing on the service station grounds a Hudson brougham having the license number given by the informant. As the officers approached the Hudson car they observed two men in the car, defendant Welch and one Walter Gale. Drawing their revolvers, the officers ordered the two men to put up their hands. They were promptly handcuffed and ordered out of the car. Officer Haas asked the men where the third man was, but the two refused to make any reply. Thereupon the service station man informed the officers that the third man was in the lavatory. Officer Smith remained with the two handcuffed men while Officer Haas went over to the lavatory and there placed the third man, who proved to be the defendant Grace, under arrest. In the meantime, Officer Smith searched the Hudson car and found a .38 caliber loaded revolver lying on the floor of the car under the driver's seat. While the officers were discussing the manner of proceeding to the police station with the three men, Gale and Welch worked their way from where they were standing over to the Hudson car, and Gale, reaching inside of the Hudson car, extracted a loaded revolver and ordered the

officers to put up their hands. Immediately Gale began shooting, he and Welch maneuvering in such a way as to keep the Hudson car between them and the officers. The officers returned the fire, but without effect. When Gale had emptied his revolver he and Welch made their escape by jumping over a low fence which was built along the boundary line of the service station grounds and succeeded in secreting themselves in the adjoining property. During the shooting Grace took no part in the affray, nor did Welch do any shooting, although he apparently co-operated with Gale in reaching the car in order to get the revolver. Gale was subsequently apprehended.

It also appears from the testimony that Welch and Grace were acquainted in the northern part of the state and came to Long Beach upon the suggestion of Grace that the Long Beach territory furnished a good opportunity for burglary jobs. They met Gale at Long Beach, and the three men with one McDonald and two young women lived in a house on Prospect Avenue in Long Beach for a number of weeks. During this period of time, Welch and Grace did a job of shingling and some plastering; otherwise the trio found their main source of livelihood in burglarizing houses and selling their loot to Afana Brothers, who appear to have made a business of acquiring stolen goods.

On the night of the shooting Welch, Gale, and Grace left the house where they were living with the purpose of doing a burglary job. They picked out a house occupied by one Merithew as the object of their attack. While reconnoitering about the place, they were observed by a neighbor, John T. Houser, who became suspicious of their conduct and reported them to the police station. The trio realized they were the object of Houser's scrutiny and deemed it advisable to drive away from where they were discussing the situation in front of the Merithew house. It was their theory that by going away they would thus lull the suspicions of Houser and return later and complete the job. As they were driving about waiting for the opportune time to return to the Merithew house, Grace, who was driving the car and apparently the owner of the car, or at least exercised ownership over it, drove up to the service station where the shooting took place, for the purpose of going into

the lavatory. While there, the officers came up and the shooting followed.

█ There is abundant evidence to support the theory of the prosecution that Grace, Gale, and Welch were making a business of burglarizing unoccupied houses; that on the night in question when they started out to rob the Merithew house they carried with them two loaded revolvers to be used unquestionably in the event that anyone should interfere with their evil design. A reasonable inference to be drawn from the fact that they had the loaded revolvers on a burglary job is that they were prepared to and would shoot to kill any officer or other person who interfered with them or apprehended them. Welch co-operated with Gale with whom he was handcuffed in aiding him to reach the automobile and extract the revolver and thus clearly aided and abetted Gale in the shooting.

█ It is a well-settled rule of law that where two or more persons conspire to carry out a common design, each one of the conspirators is liable for every act of his confederates done during the life of the conspiracy and in the furtherance of the accomplishment of the common plan.

We can hardly conceive of a situation where this rule would be more clearly applicable than in the instant case. The use of the loaded revolvers carried in the Hudson car by any one or two of the trio to prevent arrest or interference was just as clearly a part of the common design of the conspirators as was the breaking into the house and stealing its contents, and when Gale attempted to kill the officers, Welch and Grace were just as much responsible for the act of shooting as they would be of burglary if Gale had entered the house for the purpose of burglarizing it, leaving Welch and Grace outside to watch. This principle and its application to the facts in the instant case is recognized and declared in the case of *People* v. *Kauffman,* 152 Cal. 331 [92 Pac. 861], and also in the case of *People* v. *Wheaton,* 64 Cal. App. 58 [220 Pac. 451].

█ We are of the opinion that the verdict of guilty as to the charge contained in the second count is abundantly supported by the evidence. In fact, we are moved to suggest that it is difficult for us to understand how the jury could have arrived at any other verdict from the evidence.

█ The third point urged by appellants is that the court erred in overruling their objection to the reading of the testimony given by defendant Welch in another case. The defendant Grace had previously stood trial for burglary, and in that case defendant Welch appeared as a witness for the state. In his testimony in that case Welch related his acquaintance and relations with Grace and gave the details of a number of burglaries which he and Grace committed in Long Beach. He detailed the events of the evening on which the shooting occurred. The prosecution in the instant case offered such portions of Welch's testimony given in the previous trial as were pertinent to the issues involved. Defendants objected on the ground that the testimony of Welch given at the previous trial was induced by a promise of immunity from punishment. The trial court took evidence upon that question. It would avail nothing here to go into the details of the testimony offered by appellants and by the state to meet that issue. Inasmuch as there was a conflict in the testimony on the point, it was well within the province of the court to overrule the objection. Subsequently, by stipulation, the same testimony that was offered upon the question in the absence of the jury was read to the jury, and the court properly instructed the jury that the matter involved an issue of fact that came within their province to decide. In view of the verdict of the jury, we must presume that they concluded the testimony given by Welch was not induced through a promise of immunity. In the case of *People* v. *Black,* 73 Cal. App. 13, 17 [238 Pac. 374], the court in considering a similar question said: "In our opinion the whole question resolves itself into one merely of conflicting evidence, the determination of the result of the conflict resting finally in the trial court. . . . The evidence upon the point being in conflict, it must be assumed that the confessions were properly admitted."

█ The last point urged by appellants is that the evidence is insufficient to establish a violation by appellants of section 2 of Act 1970 of the Statutes of 1923 (Stats. 1923, p. 695). This act makes it a felony for any person who has been previously convicted of a felony to have in his possession or under his custody or control any pistol, revolver, or other firearm capable of being con-

cealed on his person. Appellants contend that there is no evidence in the record to show that either of them had a revolver in his possession or in his custody or control. The evidence without dispute does show that there were two loaded revolvers in the Hudson car, one found under the driver's seat by the officers, and the other extracted from some place in the rear of the car by Gale and which Gale used in the shooting. The evidence further shows that Grace was the driver of the car and at least exercised ownership over it. To say that under the evidence that appellants, while they were driving in the car, did not have in their possession or custody or under their control the revolvers that were then in the car, unquestionably carried to aid in the burglary job that was the object of the evening trip, would do violence to reason. In addition, there is the testimony of the witness Lillian O'Farrell, who was one of the two women who resided with the appellants in the house on Prospect Avenue in Long Beach, that she saw both the appellants with revolvers, and that appellants were in the habit of carrying revolvers with them when they went out on their burglary jobs. There is no merit in this point.

As we find no merit in the record, the judgment and the order denying the motion for a new trial are affirmed.

Houser, Acting P. J., and York, J., concurred.