[Crim. No. 869.   Third Appellate District.—November 30, 1926.]

## THE PEOPLE, Respondent, v. CLYDE McNETT, Appellant.

[1] CRIMINAL LAW—ATTEMPT TO COMMIT ROBBERY—ACCOMPLICE—CORROBORATIVE EVIDENCE—EFFECT OF UPON ERRORS.—While corroborative evidence of that given by an accomplice need not be direct and positive, and circumstantial evidence which tends to connect the defendant with the commission of the crime charged is sufficient to fulfill the requirements of the law, and while the corroborative evidence required by the provisions of section 1111 of the Penal Code need not be strong, and is sufficient if it tends to connect the defendant with the commission of the crime, though if it stood alone it would be entitled to but little weight, and such testimony need not extend to every fact in detail covered by the statement of the accomplice, nevertheless in this prosecution for attempt to commit robbery, the corroborative evidence of that given by defendant's accomplice is not so clear and convincing as to render serious errors occurring at the trial harmless.

[2] ID. — OTHER CRIMES — STATEMENT OF DISTRICT ATTORNEY . OF ANOTHER COUNTY — PREJUDICE. — In such prosecution, defendant was prejudiced by the admission in evidence of a statement made by the district attorney of another county in connection with defendant's probation for a crime committed in said other county, which statement contained declarations by the district attorney to the effect that defendant was not to associate with criminals

---

1.  See 8 Cal. Jur. 178; 1 R. C. L. 168.

or aid in uncovering crime, and also referred to other crimes committed by defendant.

[3] ID.—CONDUCT OF DEFENDANT—STATEMENT OF DEFENDANT'S COUNSEL—LANGUAGE OF COURT—EFFECT OF.—In such prosecution, the language of the court, to the effect that defendant's counsel's statement that defendant's conduct was being criticised because he acted in the capacity of a stool-pigeon for the sheriff's office was untrue must necessarily have had a tendency to prejudice the jury against the defendant's case, as the jury may well have drawn the inference from such language that the court believed that the conduct of the defendant was necessarily criminal.

[4] ID. — INSTRUCTIONS. — In such prosecution, there was no error in giving or refusing instructions.

[5] ID.—SENTENCE.—In such prosecution, the pronouncement of an erroneous sentence would not be sufficient grounds for a reversal, but would be an informality which could be corrected by having the sentence again pronounced.

---

(1) 16 C. J., p. 704, n. 35, p. 705, n. 40, 41, p. 713, n. 31; 17 C. J., p. 271, n. 26. (2) 16 C. J., p. 586, n. 98; 17 C. J., p. 319, n. 22, p. 320, n. 36. (3) 16 C. J., p. 827, n. 15. (4) 34 Cyc., p. 1813, n. 5. (5) 17 C. J., p. 367, n. 94.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. Charles O. Busick, Judge. Reversed.

The facts are stated in the opinion of the court.

Clifford A. Russell for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

NEEDHAM, J., *pro tem.*—The appellant Clyde McNett was jointly charged with one Adna J. Davis by an information with the crime of attempt to commit robbery and was convicted by a jury and was by the court sentenced to serve a term of twenty years in the state prison at Folsom. The codefendant Davis had previous to the trial of McNett pleaded guilty.

---

5. See 8 Cal. Jur. 478.

McNett has appealed from the order denying his motion for a new trial and from the judgment and sentence of imprisonment.

In a general way the facts as shown by the evidence disclosed that on the night of September 15, 1924, an attempt was made to hold up a roadhouse in Sacramento County, known as the Plantation Inn. Information that the holdup would be attempted had been received by the sheriff's office, and five deputies from that office were sent to the scene and were there at the time the attempted robbery took place. Two of the deputy sheriffs, Brady and Murphy, were stationed inside of the building with P. W. Pedelty, manager of the inn; the other three deputies, Robbins, Bryant, and Garibaldi, being at the time in the oil station near the Plantation Inn. At about the hour of midnight, according to the testimony, an automobile drove up to the place and two armed men, Hart and Schierhoff, ran to the inn, where an exchange of shots took place, which resulted in the death of both of these invaders. The defendant Davis admitted that he drove the car and that he escaped in his car after being fired upon by the officers at the oil station. Up to this point there is no conflict in the testimony. The defendant Davis, who gave testimony for the People after his plea of guilty, and thus acknowledged himself to be an accomplice, testified that the appellant McNett was in the automobile at the time it was driven to the inn and that McNett left the car at the same time as Hart and Schierhoff. Davis also testified that Hart, Schierhoff, and McNett met at the home of McNett on that evening, where McNett secured a gun, which he gave to Schierhoff, and that McNett accompanied Davis and the two other bandits to a point beyond the Plantation Inn, where the appellant McNett planned the details of the holdup and with the others journeyed to the Plantation Inn for the purpose of robbing the inn.

Thereafter the district attorney introduced a statement made by McNett, appellant, shortly after the attempted robbery, in the office of the district attorney, which was taken down in shorthand and transcribed. This statement was voluntarily made and was very lengthy, containing some seventy-seven pages of typewriting. In this statement McNett denied that he was present at the holdup at the Plantation Inn, but he admitted that he had discussed the question

of holding up the inn with Hart and Schierhoff on the day of the attempted holdup, and on that same night he had met Davis at the home of Schierhoff and accompanied Hart, Davis, and Schierhoff and two other men to his own home, where he stated he got out and bade them good-night, whereupon he telephoned to the sheriff's office, "Tell Robbins, the boys are on their way out." The statement of the appellant was to the effect that he had agreed with Deputy Sheriff Robbins that he would pretend that he would act in conjunction with Hart and Schierhoff and other criminals, who were under suspicion of having been implicated in several robberies and holdups that had occurred in Sacramento County, and would give such information as he obtained to Officer Robbins so that such crimes might be frustrated. It appears that the appellant had been twice convicted of a felony before and that at the time of the attempted robbery of the Plantation Inn, on September 15, 1924, the appellant was under probation for a crime committed in Contra Costa County. The voluntary statement made by the appellant and which, as stated, was exceedingly long, and which was read to the jury, contained a statement of the appellant to the effect that when granted probation it was understood that he was to co-operate with the officers in uncovering crime by pretending to be still a criminal and thus gain the confidence of the criminal element, and inform the officers of any contemplated crimes. The appellant admitted, however, that he had been contradicted in this particular by the officials who had granted him probation and appellant McNett was put through a long and thorough questioning by the district attorney and all his statements and actions and all surrounding circumstances were thus put before the jury in the reading of this statement. The jury thus had before them, in contrast with the testimony of Davis, the story of McNett as given in the voluntary statement to the district attorney.

In support of the appeal of appellant it is contended:

1. That the evidence does not support the verdict.

2. That the court erred in denying his motion for an instructed verdict after the completion of the People's case.

3. That the court erred in its instructions to the jury.

4. That the court erred in its rulings on admissibility of evidence.

5. That the court had no power to impose a definite term of years.

We will first consider the ground that the evidence does not support the verdict. The testimony of Davis, the accomplice, in most particulars seems clear enough. However, he was sharply contradicted in very important particulars by the three deputy sheriffs, Robbins, Bryant, and Garibaldi, who were stationed at the oil station near the Plantation Inn, the scene of the attempted robbery. Davis testified that the appellant McNett was in the automobile at the time the machine drew up to a place near the oil station, and that he got out of the machine at the same time Hart and Schierhoff did, the three officers just named testifying positively that only two men got out of the machine. Davis, the accomplice, also testified that he got out of the automobile after the firing commenced, but it was not a natural thing for Davis to get out of the automobile after being fired upon, and he was contradicted in this by the three officers named. We thus find that the testimony of an accomplice is contradicted in very vital matters by three officers of the law who were stationed at the place at the time for the purpose of apprehending those whom they had received advance information were to commit the crime. It would seem that there could be no possible motive for these officers to misrepresent the facts; on the contrary, there is every reason for the belief that the officers stated the truth, and were in a position to observe and to tell accurately just what in fact did happen and who were present. It is true that the witness, Mrs. Hartley, and her son, Ivan Hartley, testified that Robbins had told them that there was a fourth man in the machine, but Robbins denied making this statement. Conceding that the statements of Robbins were inconsistent, it can hardly be considered in any sense as evidence against the appellant McNett and could be considered only as tending to discredit the testimony of Robbins, and it would seem that its greatest effect would be to eliminate the testimony of Robbins. If we consider the testimony of Robbins as eliminated, we have a verdict supported only by the testimony of an accomplice, corroborated, if at all, by such unfavorable inferences as can be drawn, but which do not necessarily arise from the statement of McNett. It seems that the accomplice

Davis was not apprehended after the commission of the crime, but that subsequently he voluntarily gave himself up and entered a plea of guilty. The inference is plain that Davis undoubtedly was assisting the prosecution in the hope of being given a lighter sentence, and it also appears in the record that at the time he gave his testimony he had pending an application for probation. For these reasons it would seem that the testimony of the accomplice Davis cannot be considered as very strong or convincing.

We have heretofore referred to the statement made by the appellant McNett to the district attorney shortly after the commission of the crime.

It is too long to be quoted herein, consisting, as we have stated, of some seventy-seven pages of typewriting.

McNett's statement that he was a feigned accomplice acting in co-operation with Deputy Sheriff Robbins is not without corroboration. It appeared irresistibly from the evidence that the sheriff's office had advance information of the intended robbery; otherwise, there would have been no occasion to station five officers, two in the Plantation Inn and three at the oil station. McNett stated that he "was working for the sheriff's office to apprehend"; that he called Robbins up about 2 P. M. of the day of the crime and told him "that these men were planning on robbing the Plantation Inn that night"; that he first told the officers of such plan two or three days before that; that Robbins instructed him what to do in apparent co-operation with these men; that about 10 P. M. of the day of the crime he called up Ellis Jones, the sheriff, and said to him, "Tell Robbins the boys are on their way out, and he says, 'Who is this'? I says, 'A friend of Robbins, . . . Jack,' that is the name that Robbins had me call him up under for . . . several months, . . . and he says, 'All right, thanks.' And I says, 'Goodnight,' . . . and we hung up"; that while he was operating for the sheriff's office Robbins gave him a "twenty-five Colt's automatic"; that later he returned the "twenty-five" to Robbins, who then gave him "a forty-five Colt's." None of the foregoing statements were contradicted by any witness. It is a reasonable inference that at least the sheriff would have been placed upon the witness-stand to contradict the statement that McNett informed him of the intended crime if the statement is not true. If McNett was a real

accomplice, it was a very unnatural thing for him to keep the officers informed of the contemplated crime and to again inform the sheriff thereof immediately prior thereto.

[1]   While, of course, it is axiomatic that corroborative evidence of that given by an accomplice need not be direct and positive, and while circumstantial evidence which tends to connect the defendant with the commission of the crime charged is sufficient to fulfill the requirements of the law, and while the corroborative evidence required by the provisions of section 1111 of the Penal Code need not be strong and is sufficient if it tends to connect the defendant with the commission of the crime, though if it stood alone it would be entitled to but little weight (*People* v. *McLean*, 84 Cal. 480 [24 Pac. 32]; *People* v. *Barker*, 114 Cal. 617 [46 Pac. 601]), and while such testimony need not extend to every fact in detail covered by the statement of the accomplice (*People* v. *Cloonan*, 50 Cal. 449; *People* v. *Kunz*, 73 Cal. 315 [14 Pac. 836]), and while it has been held that sometimes a fact or circumstance which seems to be very slight carries the quality of sufficient corroborative proof, and while it may be claimed that the corroborative evidence in the instant case is sufficient under section 1111 of the Penal Code, yet we are constrained to hold to the opinion that such corroborative evidence in the instant case is not so clear and convincing as to render serious errors occurring at the trial harmless.

We will next consider the fourth point, to wit, that the court erred in its rulings on the admissibility of evidence.

[2]   The trial court admitted and there was read to the jury that portion of the statement of the appellant McNett wherein appeared in detail what occurred in the court of Judge McKenzie in Contra Costa County, including a statement made by the district attorney of that county and which we think was purely hearsay and its admission was immaterial and highly prejudicial to the rights of the defendant, especially that portion which related to the commission of other crimes by the appellant.   The reference in the statement of the district attorney of Contra Costa County to crimes committed by the appellant in other counties doubtless had a decided influence on the jury, especially the reference to a gas station holdup in Butte County, it being a crime apparently similar to the one committed in the

instant case. We quote from the record a portion of the statements admitted:

"Q. (Interposing.) Well, then, Mr. Tinning said: (Reads:) "—'quotation:' "Well, if the court please, I want to say right here, that there was no knowledge'—the court interrupted and said: 'I mean he was sent off to go and help these officers. Mr. Tinning: No, sir, he was not. I positively wanted to make that clear. Before this man was released, there was a long discussion as to whether he should be given parol or not—probation. It was necessary to ask— we weren't going to release him in this county on probation, if he was going to be arrested for some transaction that had occurred prior to his arrest in this county, and it was for that purpose, and that purpose alone, that inquiry was made in the different counties where he had committed offenses, and in each of those counties, the Sheriff, or some other officer had been here and had gone over all those facts, and after that was done, and that testimony was written up and in the hands of the District Attorneys of the various counties, we inquired of them whether or not they desired to prosecute, and the only place where there was any difficulty about it was in Butte County, where that gas station holdup occurred, and there was some question there, and there was a delay of a couple of weeks before they determined what position they would take. . . .

"When McNett received his order of probation, he was advised by me, and his wife was advised by me, that he was not to associate with criminals, and was to have nothing to do with them, and that if he did, I went so far as this, to ask his wife if he did commence to associate with them, to advise our office so that we could take steps to return him here. . . .

" 'I never encourage him or any man—I say this, because I want it clear as to what his instructions were—to in any way act as a stool pigeon, or to go out and inform himself as to what other criminals were doing, and it was a surprise to me to find when this matter came up that he had been actively engaged, or participated as a passive or active member of the group that were committing crime. I had understood and knew from what he had done here, that he knew enough of these men to be able to tell from newspaper articles, who committed crimes, and that sort of thing, and I

never felt that there was anything improper in that, but I certainly would feel and I think any officer would feel it was improper for a man that was sent away to rehabilitate, to again mix up with men violating the law, both because it put a premium on granting probation to stool pigeons, and, most important of all, it would not allow the man to rehabilitate himself and I want my statement to be perfectly clear, because it was made clear to both McNett and his wife, that they weren't to associate with criminal associations. Isn't that true, Mr. McNett? Mr. McNett: A. Yes, sir. . . .

" 'Mr. Tinning: I made it very clear? Mr. McNett: A. Yes, sir. Mr. Tinning: I went so far as to tell your wife just what I have said, if you did start in missing, I wanted to know it. Mr. McNett: Yes, you told her that. You made the same remark to me, but I was given to understand through Mr. Harrison and the Sheriff's office here, and what the other sheriffs had told me, that I was to clear up what crimes that had already taken place that I knew of. Mr. Tinning: It was never made a condition, either understood or expressed or unexpressed, that you were to go out and ferret out crime and act as a stool pigeon to the Sheriff's office of Sacramento County or any other county? Mr. McNett: Not through you; no, sir.' "

The court first sustained the objections made by the appellant to the foregoing testimony, but subsequently changed his ruling and permitted this evidence to stand. It would seem even if in his statement to the district attorney McNett had admitted these other crimes, such admissions could not properly have been introduced in evidence because it is not possible to convict a defendant of one crime on proof of other independent crimes. (*People* v. *Adams,* 76 Cal. App. 178 [244 Pac. 106].)

[3] During the argument of counsel for the defendant he stated: "Because he (referring to McNett) has acted in the capacity of what we term a stool-pigeon in this case for the sheriff's office, his conduct is being criticised by the men who inaugurated a system of stool-pigeon in this county." He was then interrupted by the district attorney, who used the following language:

"Mr. Henderson: Now, we object to that, if Your Honor please. I have never used a stool-pigeon in any of my work. Mr. Russell is going out of his way to state a malig-

nant falsehood to this jury. The men that I have employed in the District Attorney's office have been detectives, investigators. A stool-pigeon is a criminal who does just what McNett did. My men went out, just the same as traffic officers, went out to see the violations of the law that were performed, and we have yet to hear Mr. Russell or the Sacramento 'Bee' or anybody else call the traffic officers, stool-pigeons.''

Thereupon the court voluntarily used the following language:

''The Court: I think Mr. Russell knows, himself, that he was saying what was untrue when he made that statement. Mr. Russell knows that there hasn't been, in this court, a stool-pigeon used on behalf of the People, and there hasn't been a stool-pigeon used by either the District Attorney's office, or in this court, and when you made that statement, Mr. Russell, I think you deliberately made a statement that you knew was untrue, and the Court will state that to you, or anybody else present.

''Mr. Russell: May I be permitted to reply, Your Honor?

''The Court: You may proceed with your argument.

''Mr. Russell: I desire, at this time, to note an exception to Your Honor's remarks in reference to your statement about my statement.''

We think the language especially of the court toward the defendant's counsel must necessarily have had a tendency to prejudice the jury against the defendant's case. The jury may well have drawn the inference from such statements that the court believed the conduct of the defendant was necessarily criminal.

[4] The next point we will consider is that the court erred in instructions to the jury. We think it is sufficient, however, to say that there was no error in giving or refusing instructions.

The last point raised for reversal is that the court had no power to impose a definite term of years, but should have pronounced a judgment for an indeterminate period. As the law now stands it would seem that the opinion in the case of *People* v. *Lee,* 36 Cal. App. 323 [172 Pac. 158], applies. [5] However, the pronouncement of an erroneous sentence would not be sufficient grounds for a reversal, but would be an informality which could be cor-

rected by having the sentence again pronounced, and in view of the fact that we feel compelled to reverse this case, we see no occasion for dealing with this point in greater detail.

For the reasons given, we are led to the conclusion that the defendant was not fairly tried nor justly convicted, and it therefore follows that the order denying his motion for a new trial and from the judgment and sentence of imprisonment must be reversed. It is so ordered.

Plummer, J., and Finch, P. J., concurred.