[Crim. No. 1267. Third Appellate District.—August 7, 1933.]

THE PEOPLE, Respondent, v. JACK NORRIS, Appellant.

Maxwell M. Willens for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was convicted of the crime of robbery in the first degree, upon an information filed against him by the district attorney of San Joaquin County, charging that the defendant on or about the twenty-eighth day of February, 1933, wilfully, feloniously, etc., held up and robbed the occupants of a certain roadhouse known as and called the "Five Mile House", situate in said county. The roadhouse in question is situated about five miles north of the city of Stockton.

The record discloses that the defendant and one George Hibbitt, a negro, participated in the robbery, and at the trial of the appellant in this action Hibbitt, who had previously pleaded guilty and been sentenced to Folsom, told the whole story of the transaction. This record discloses that the appellant and Hibbitt had been acquainted with each other for some years, had worked together in Stanislaus County at a place near Los Banos, and for the same employer. The record further shows that on Sunday evening, February 26, 1933, while the defendant, accompanied by two witnesses

who testified in the cause, to wit, Art Fuller and H. W. Lambert, were walking along on one of the streets in the city of Stockton, the appellant recognized Hibbitt, who was sitting on a porch in front of a residence bordering the street where the three parties were walking, and at the time in question Hibbitt and the appellant had some conversation. This conversation was not overheard by either of the witnesses we have mentioned. Thereafter, the robbery occurred on the evening of February 28th.

The circumstances surrounding the robbery appear to be as follows: An automobile drove up in front of the roadhouse some time between 10 and 11 on the evening of February 28th; a colored man and white man immediately appeared at the door of the roadhouse, the colored man carrying a revolver, the white man having a handkerchief tied over his face to conceal his features; the occupants of the roadhouse were lined up, bound with wire, their pockets rifled and the till of the roadhouse opened and the contents taken. The proceeds of the robbery aggregated about $175. The details of the robbery are fully set forth in the testimony of George Hibbitt; the fact of their being driven to the roadhouse in a Buick coupe belonging to Norris; the kind of gun which Norris gave to Hibbitt to use as he preceded the defendant in accomplishing the robbery. It also appears from the testimony of Hibbitt that the appellant and Hibbitt had been acquainted with each other from some time in the year 1926; that it was in the years 1926, 1927 and 1928 that the two were living near Los Banos. This witness, however, had not seen the appellant after 1928 until the meeting in Stockton which we have just mentioned. On the way out from Stockton for the purpose of the robbery, it appears that the appellant, who was driving the car, explained to Hibbitt the manner in which the holdup should be carried out, and that the two drove about for some little time until the hour which we have mentioned.

Upon this appeal it is contended that the evidence is not sufficient to warrant conviction, and that the court erred in its instructions to the jury, also in its rulings excluding the testimony offered by the appellant. The contention that the testimony is insufficient to support the verdict is based upon the provisions of section 1111 of the Penal Code, which specifies that a conviction cannot be had upon

the testimony of an accomplice unless it is corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense, etc. If the record discloses any testimony tending to connect the defendant with the commission of the offense, the first contention of the appellant is unsound.

There is testimony in the record showing that the defendant, on or about the first day of October, 1932, went to work on a ranch known as the "Quinto" ranch, owned by a man by the name of Devaney. This ranch is located about two miles north of the Five Mile House, and while there, had a conversation with a man by the name of Tinner, and during this conversation the appellant stated to Tinner that he had in mind the holding up of the Five Mile House. The record further shows that the employees of the Quinto ranch, including the appellant, were accustomed to have their pay checks cashed at the Five Mile House. The witness Hibbitt, testified that the wire which was used in tying up the occupants of the Five Mile House on the night of the robbery was obtained from the Quinto ranch. It was found upon examination that the wire used in tying up the occupants of the Five Mile House was similar to wire found and left at the Quinto ranch. The wire used was baling wire.

The witness Hibbitt testified that the gun that was given to him by the appellant was a Colts-44 six-shooter, single action, side loader. One of the occupants of the roadhouse who was held up testified as to the revolver used on that occasion. Question and answer in relation to the revolver are as follows: "Q. Was there anything about it that you noticed particularly? A. It has got that side rod there, side loader, an old Colts. I could tell it, in fact I identified that gun before they ever picked it up, yes, I don't know if it is the same gun, but it is one like it if it is not the same."

The record shows that when the defendant was arrested in Reno, to which place he had gone shortly after the robbery, a gun in the possession of the defendant was found precisely like the description of the gun given by the witness Hibbitt, and also, one of the occupants of the roadhouse. The defendant admitted the ownership of the gun and stated that he had owned it for about fifteen years. One of the occupants of the roadhouse testified that he noticed a peculiar

wobbling gait of the white man who accompanied the negro, and that the wobbling gait of the white man was exactly similar to the walk of the defendant, which he had noticed after the defendant's arrest and during the course of the trial at Stockton. The appellant denied his acquaintance-ship with the witness Hibbitt; denied that he ever knew him in Los Banos; denied the meeting in Stockton testified to by the witnesses Tinner and Lambert. The conversation testified to by Tinner with the appellant appears not to have been denied.

The record further shows that Hibbitt knew all about the automobile owned by the appellant; that he had had certain repairs made thereon; the cost thereof; had been compelled to have the shock-absorbers taken off the machine, and other incidents in relation to the automobile, showing his famil-iarity with, and acquaintance with the affairs of the appel-lant. The defendant simply denied his acquaintanceship with the negro.

The record shows, as we have stated, that the appellant left Stockton shortly after February 28th, to wit, on March 4th, and was arrested in Reno, Nevada. The testimony and corroborating circumstances which we have detailed may be admitted as not sufficient, if standing alone, to support a verdict of conviction, but are certainly corroborating circum-stances tending to support direct testimony given by the accomplice. As to the legal sufficiency of the corroborating testimony which we have set forth, an excerpt from the case of *People* v. *McNutt*, 80 Cal. App. 81 [251 Pac. 688], wherein this court, speaking through *pro tempore* Justice Needham, used the following language: "While, of course, it is axio-matic that corroborative evidence of that given by an ac-complice need not be direct and positive, and while circum-stantial evidence which tends to connect the defendant with the commission of the crime charged is sufficient to fulfill the requirements of the law, and while the corroborative evi-dence required by the provisions of section 1111 of the Penal Code need not be strong and is sufficient if it tends to con-nect the defendant with the commission of the crime, though if it stood alone it would be entitled to but little weight (*People* v. *McLean*, 84 Cal. 480 [24 Pac. 32]; *People* v. *Barker*, 114 Cal. 617 [46 Pac. 601]; and while such testi-mony need not extend to every fact in detail covered by the

statement of the accomplice (*People* v. *Cloonan,* 50 Cal. 449; *People* v. *Kunz,* 73 Cal. 315 [14 Pac. 836]); and while it has been held that sometimes a fact or circumstance which seems to be very slight carries the quality of sufficient corroborative proof, and while it may be claimed that the corroborative evidence in the instant case is sufficient under section 1111 of the Penal Code, yet we are constrained to hold to the opinion that such corroborative evidence in the instant case is not so clear and convincing as to render serious errors occurring at the trial harmless.''

■ Our attention has not been called to any serious errors, or in fact, to any errors of the trial court occurring at the trial of the instant case. The appellant does urge that the court committed error in sustaining objections to questions propounded to Mrs. Norris, the wife of the appellant, as to whether she had or had not written to the appellant while he was living in Stockton and she living in Reno, asking the appellant to come to Reno, the contention being that this was in explanation of the defendant's leaving Stockton shortly after the robbery for which he was being tried.

An examination of the testimony given by the appellant discloses that he did not testify as to why he left Stockton and went to Reno, Nevada, nor did he attempt to give any explanation of why he left Stockton shortly after the robbery. Unless it were shown that the appellant had left Stockton at the request of his wife, and gone to Reno, the fact that Mrs. Norris had written to the appellant was, of course, wholly immaterial. No such showing was made, nor was any offer to introduce such testimony presented to the court.

■ The appellant requested from the trial court the giving of a number of instructions, most of which were refused. It is now urged that it was error on the part of the court not to give the instructions requested by the appellant, defining the weight that should be given to the testimony of an accomplice, and the fact that a defendant could not be convicted on the testimony alone of an accomplice.

Among the instructions given by the court we find the following: ''A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with commission of the offense; and the corroboration is not sufficient

if it merely shows the commission of the offense or the circumstances thereof. Corroborative evidence is additional evidence to the same point. To corroborate an accomplice the evidence need not extend to all the elements of the offense, nor prove that the accomplice has told the truth. The corroborative evidence must tend, to some degree at least, to incriminate the defendant. While it need not be strong, more is required by way of corroboration than mere suspicion." This fully covers all that was required on the subject of corroboration. In other instructions the court fully advised the jury that they could not convict the defendant unless they believed from the testimony, beyond a reasonable doubt, that the defendant was guilty. On the subject of flight, the jury was properly instructed that it was simply a circumstance which they might consider. The court correctly instructed the jury that they were the exclusive judges of the weight of any testimony that had been given.

A reading of the instructions given by the court shows that every element or question involved in the case was properly presented to the jury, and that had the instruction requested by the defendant been also read, tedious repetition would have been disclosed, all of which was properly avoided.

The order and judgment of the trial court are affirmed.

Pullen, P. J., concurred.