[Crim. No. 37. First Appellate District.—February 10, 1906.]

## THE PEOPLE, Respondent, v. JOHN ZIMMERMAN, Appellant.

CRIMINAL LAW—CONSPIRACY—DECLARATIONS OF CO-CONSPIRATOR—CO-CONSPIRATOR MAY PROVE CONSPIRACY.—The rule that the fact of a conspiracy cannot be proved by evidence of the declarations of one of the co-conspirators does not operate to prevent a person, when called as a witness, from testifying to the formation of the conspiracy, and that he was one of the co-conspirators. Upon evidence

of the formation of conspiracy being given, the witness may testify as to the acts and conduct of the co-conspirators in furtherance of the common object and before its termination.

ID.—CONSPIRACY TO ROB—EVIDENCE OF PRIOR ATTEMPTS.—Where the fact has been proved of the formation of a conspiracy to rob a particular person in a particular manner, evidence is admissible of prior unsuccessful attempts to commit the robbery, made in furtherance of the original conspiracy, notwithstanding such evidence tended to show that the defendant had committed other crimes.

ID.—HOSTILITY OF WITNESS—EXAMINATION TO SHOW PREJUDICE.— Where a witness for the prosecution has testified on cross-examination to his ill-will toward the defendant, questions asked by the prosecution on redirect examination, for the purpose of finding out as to whether or not the witness' dislike had colored his testimony, are without prejudice to the defendant, if the witness, in effect, answers such questions in the affirmative.

ID.—MEETING OF CONSPIRATORS—CORROBORATING EVIDENCE.—After a co-conspirator had testified to the formation of the conspiracy to commit the robbery between himself, the defendant and a third person, and of an unsuccessful attempt by them to accomplish it at a particular time, evidence of another witness, that he saw the three conspirators together at about that time, is admissible as tending in some degree to corroborate the testimony of the co-conspirator.

ID.—DEFENDANT AS WITNESS—SCOPE OF CROSS-EXAMINATION.—When a defendant offers himself as a witness in his own behalf, the rule that his cross-examination must be confined to the matters about which he was examined in chief does not mean that the cross-examination shall be confined to the precise sentences, names or dates mentioned in the direct examination, but must be given a reasonable construction and held to include a fair scope of questions to test the accuracy of the subject matter concerning which a defendant has testified in chief.

APPEAL from a judgment of the Superior Court of Contra Costa County and from an order refusing a new trial. W. S. Wells, Judge.

The facts are stated in the opinion of the court.

M. R. Jones, and P. F. Benson, for Appellant.

U. S. Webb, Attorney General, for Respondent.

COOPER, J.—Defendant was convicted of the crime of robbery. He made a motion for a new trial, which was denied, and this appeal is from the judgment and the order denying the motion.

There is no question as to the sufficiency of the evidence to sustain the verdict. It shows that on the 20th of March, 1905, one Daly, as a messenger of the Central Bank of Oakland, in company with one Roche, was carrying $10,000 in gold and silver coin, the property of said bank, from its place of business in Oakland, to the Bank of Point Richmond in Contra Costa county. On the trip, which was made in a buggy in open daylight, Daly and Roche took the main road to Point Richmond, and while driving along Potrero avenue, some forty feet beyond the track of the Southern Pacific Railroad, defendant jumped out from behind a post, raised a rifle which he had in his hand, leveled it at Daly's head, and told him to hold up. At the same instant a companion of defendant stepped out from behind a buggy with a revolver, which he pointed at Roche's head. With the rifle and pistol pointed at them, Daly and Roche were compelled to get out of their buggy, and the coin was taken from them, after which they were made to go a short distance from the scene of the robbery, and lie down with their faces to the ground. They were then tied and gagged by defendant and his companion, and in this condition left upon the ground.

During the trial the prosecution called one Mulcahey as a witness, who testified, in substance, that he, defendant, and one Collins knew the fact that Daly, as a messenger for the Central Bank of Oakland, had for some time been in the habit of making trips from the Central Bank to Point Richmond about twice a month, for the purpose of conveying a large amount of coin on each trip, which was used in paying the laborers in the oil works at Point Richmond, and knowing the above facts, and the habit of Daly as to carrying the coin, they entered into an agreement to waylay and rob Daly of the coin in his possession on one of these trips; that this agreement or conspiracy was entered into some time prior to, or about, the 1st of October, 1904, and, in pursuance of the common plan, four unsuccessful attempts were made to rob Daly after October 1st and prior to December 20, 1904. The witness testified that, on December 23, 1904, he was arrested and placed in prison, and knew nothing further of any of the

acts of defendant, or the subsequent robbery of Daly. The evidence, both as to the conspiracy and the acts done in pursuance of the common plan, was admitted under the defendant's objection, and to its admission he duly excepted.

The defendant claims—and it is his principal contention—that it was error to permit Mulcahey to testify as to the fact that a conspiracy was entered into by himself, defendant, and Collins, for the alleged reason that the fact of a conspiracy cannot be proved by the declarations of a co-conspirator. Defendant is correct in his contention that the fact of a conspiracy cannot be proved by evidence of the declarations of one of the co-conspirators. The existence of a conspiracy is a fact, and the declaration of a stranger is but hearsay, unsanctioned by the solemnity of an oath, or the test of cross-examination. Evidence as to such declaration not being admissible, the objection to its admissibility cannot be removed by the party making such declaration further declaring that he was one of the conspirators. His declaration is hearsay, and equally so would be the declaration made by him that he was one of the conspirators. But the record shows that no attempt was made to prove a conspiracy by evidence as to the declarations of Mulcahey. He testified directly to the fact, and to what was said and done. He was under oath and subject to cross-examination. We know of no rule of evidence that would prevent Mulcahey, when called as a witness, from testifying as to any material fact within his knowledge. This would, of course, include the fact as to a conspiracy being formed. That the witness was, by his own admission, a co-conspirator, and that, after taking part in four unsuccessful attempts to do the thing that they had agreed to do, he was arrested and placed in jail, are facts which affect his credibility and the weight to be given to his evidence, but the evidence was not inadmissible for this reason. We are of opinion that the evidence was admissible, and also the evidence as to the acts and conduct of the co-conspirators in furtherance of the common object and before its termination. (*Cohea* v. *State,* 11 Tex. App. 153; *People* v. *Brown,* 59 Cal. 345; 1 Roscoe's Criminal Evidence, 8th ed., pp. 570, 572, 574; Code Civ. Proc., sec. 1870, subd. 6.)

It is contended that the evidence of Mulcahey as to the prior attempts at robbery was erroneously admitted because it tended to show that defendant had committed, or attempted

to commit, other offenses distinct from the offense charged in the information; but, after a careful examination, we are of opinion that the evidence was properly admitted. The prior attempts to rob were all in furtherance of the original conspiracy. They were each of them attempts to rob Daly, the very person who was finally robbed. They were each attempts to rob Daly while carrying coin from the Central Bank of Oakland to the bank at Point Richmond. It was part of the common plan and design to rob Daly while so engaged on some one of the trips which he was in the habit of making, and defendant persevered until finally the plan was carried out and the crime committed. The fact that the evidence tended to show that defendant had committed other crimes did not make the evidence inadmissible, when such other crimes were committed in furtherance of and in attempting to commit the very crime which the defendant finally committed. The prior attempts tended logically and directly to establish one coherent and consistent method pursued by the defendant and his co-conspirators from the beginning to the final accomplishment of the robbery. As they were admissible for the purpose of showing the object of the conspiracy and the intention to commit the crime which was finally committed, they could not be excluded because of the fact that they tended to show that defendant had committed other crimes. (*People* v. *Winthrop,* 118 Cal. 85, [50 Pac. 390]; 1 Roscoe's Criminal Evidence, pp. 138, 139.) The evidence of Mulcahey was sufficiently corroborated to justify the verdict of the jury. In fact, the testimony of Daly and Roche is sufficient to sustain the verdict if we were to entirely disregard that of Mulcahey.

Defendant complains of the ruling of the court as to his objection to certain questions asked by the prosecution in redirect examination of the witness Mulcahey, who had testified in cross-examination to his ill-feeling toward defendant. The questions were directed to the purpose of finding out as to whether or not the fact that Mulcahey disliked defendant had colored his testimony. We do not think the rulings were erroneous, but the answer of the witness was favorable to defendant, as he said, in effect, that it had colored his testimony, and for this reason the objections are without merit. Defendant, in cross-examination, had succeeded in getting

the witness to say that he had testified against defendant "for the purpose of squaring up with him."

It was not error to permit the witness Mathews to testify that he saw Mulcahey in company with defendant and Collins in Oakland at the brewery in the early part of December, 1904. This was after Mulcahey testified that the conspiracy had been entered into by the three men who were seen together. Mulcahey testified that the three were together about the time of pay-day in December for the purpose of robbing Daly, but that on account of some workmen putting up telegraph or telephone wires, Daly got past them and they did not succeed. The evidence tended in some degree to corroborate that of Mulcahey.

The defendant testified on his own behalf to the effect that he was not in either Alameda or Contra Costa county on the day of the robbery, and that on none of the days mentioned by Mulcahey in October, November, or December, 1904, was he present at the places, nor did he do any of the things, testified to by Mulcahey. His testimony in direct examination was confined to the places and transactions mentioned by Mulcahey. The prosecution was allowed, under defendant's objection, to cross-examine him as to other dates on which he was with Mulcahey or Collins or both. It is now urged that the court erred in permitting the cross-examination to take too broad a range, and to go entirely outside of the matters concerning which defendant was examined in chief. There is no doubt of the rule that when a defendant offers himself as a witness, his cross-examination must be confined to the matters about which he was examined in chief. Defendant, in his examination in chief, had covered a pretty wide range. He gave his whereabouts on the day of the commission of the crime from the time he rose at 7:30 in the morning until 5 o'clock in the afternoon. He stated that he was not in Alameda or Contra Costa county on that day between 8 o'clock in the morning and 4 o'clock in the afternoon. He testified further that he had heard Mulcahey testify that he had talked with him (defendant) in the months of October, November, and December, 1904, up to the twentieth day of December, 1904; that he had no conversations with Mulcahey at any of the times named by him, and that he was not in either Alameda or Contra Costa county at the

dates mentioned by Mulcahey, and that he never was in Contra Costa county in his life but once, about ten years before. Now, the matters concerning which defendant was examined in chief were as to the facts tending to show a conspiracy. He denied each and every conversation testified to by Mulcahey. The prosecution had the right to cross-examine him as to the whole matter. If Mulcahey had not given the date or the hour correctly, the prosecution had the right to ask defendant if he did not have the conversations, or do the things testified to by Mulcahey about the time or near the time as given by him. If he never, in October or November, or December, 1904, had any conversations with Mulcahey and Collins, and never tried to rob Daly, he could have so stated. He will not be allowed to deny the dates, which are immaterial, and shield himself under the statute from being asked about the transactions and conversations, which are material. The statute does not mean that the cross-examination shall be confined to the precise sentences, names or dates mentioned in the direct examination, but it must be given a reasonable construction and held to include a fair scope of questions to test the accuracy of the subject matters concerning which a defendant has testified in chief. (*People* v. *Gallagher,* 100 Cal. 466, [35 Pac. 80]; *People* v. *Teshara,* 141 Cal. 636, [75 Pac. 338].)

We have examined the other alleged errors, but find nothing that would justify a reversal of the case.

The judgment and order are affirmed.

Harrison, P. J., and Hall, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 12, 1906, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 9, 1906.