[Crim. No. 2760. Second Appellate District, Division Two.—November 13, 1935.]

THE PEOPLE, Respondent, v. WILLARD G. EARL et al., Appellants.

William E. Dudney, Kirtland I. Perky and James E. Fenton for Appellants.

U. S. Webb, Attorney-General, and Frank Richards and A. H. Van Cott, Deputies Attorney-General, for Respondent.

WOOD, J.—The information charged defendants Earl, Ryan, Dalebout and Rasmussen with the crime of conspiracy

to commit robbery. The information was dismissed as to defendant Dalebout in order that he might become a witness for the People. At the close of the prosecution's evidence the court dismissed the charge as to defendant Rasmussen for insufficiency of the evidence. Defendants Earl and Ryan prosecute this appeal from a judgment of conviction.

From the testimony of Dalebout it appears that in January, 1935, the defendants met and agreed upon a plan to go to a residence at 414 South Oxford Street, Los Angeles, where they were to enter the house and secure certain money and bonds, and, if necessary, bind the occupants of the house with rope. Later all of the defendants went to the vicinity of 414 South Oxford Street for the purpose of carrying out the object of the conspiracy and waited for a considerable length of time while they were watching the movements of an employee at the residence, but they desisted from entering the house for the reason that it appeared to them that the robbery could not be successfully consummated. They took with them a piece of rope and a gun. A witness testified that defendant Rasmussen and another man had, before the trip to the Oxford Street residence, appeared at the store where he was employed and had purchased rope similar to the rope taken to the residence in question. Ryan admitted in the office of the district attorney that he had accompanied Rasmussen at the time the rope was purchased. Evidence was admitted that both of the appellants made statements after their arrest and before the trial which virtually amounted to confessions that they had taken part in the conspiracy and that they had accompanied the other defendants to the neighborhood of 414 South Oxford Street as related by Dalebout.

The testimony of Dalebout, even though he was an accomplice, is sufficient to establish facts necessary to constitute the crime, and the confessions of the appellants are sufficient to furnish the corroboration required by the code. (*People* v. *Henson*, 32 Cal. App. 600 [163 Pac. 685] ; *People* v. *Tobin*, 39 Cal. App. 76 [179 Pac. 443] ; *People* v. *Richardson*, 161 Cal. 552 [120 Pac. 20] ; *People* v. *Josselyn*, 39 Cal. 393; *People* v. *Barnnovich*, 16 Cal. App. 427 [117 Pac. 572] ; *People* v. *Zimmerman*, 3 Cal. App. 84 [84 Pac. 446].)

Appellants complain of the ruling of the trial court admitting in evidence the confessions of appellants. It ap-

pears that the confession of Rasmussen was refused admission on the ground that it was not freely and voluntarily made, and appellants assert that the evidence as to their confession was quite similar to the confession of Rasmussen. There was a serious conflict between the testimony produced by the prosecution and that offered by the defense on the subject of the admissibility of the confessions. The evidence was heard by both the court and a jury. The court having found from the evidence that the confessions were admissible, and the jury, upon proper instructions, having found defendants guilty, a reviewing court may not disturb these findings. (*People* v. *Bird,* 60 Cal. 7; *People* v. *Wells,* 145 Cal. 138 [78 Pac. 470]; *People* v. *Erno,* 195 Cal. 272 [232 Pac. 710]; *People* v. *Tedesco,* 1 Cal. (2d) 211 [34 Pac. (2d) 467].) The fact that the court may have found the confession of Rasmussen inadmissible does not change the rule as applied to the other defendants.

In finding the appellants guilty, the jury did not fix the degree of robbery contemplated by the conspiracy, and appellants now argue that the verdict is void for uncertainty. This contention cannot be upheld. It has been held under similar circumstances that such a verdict is sufficient. (*People* v. *Clement,* 97 Cal. App. 238 [275 Pac. 511]; *People* v. *Dukes,* 2 Cal. App. (2d) 698 [38 Pac. (2d) 805]; *People* v. *Welch,* 89 Cal. App. 18 [264 Pac. 324].)

Appellants vigorously assert that the trial court was guilty of misconduct in his remarks made while defendant Ryan was on the witness stand and in his questions directed to this defendant. The record shows that the trial judge made this statement: "I have tried to get this witness to speak like a man, but it doesn't seem to do any good. He doesn't seem to want the jury to hear his testimony." A little later in the record the following questions by the court and answers by the defendant Ryan appear: "Q. You did tell the truth then occasionally, did you? . . . Q. What was your idea in telling all of those lies? A. I did not know what to say. Q. Did it ever occur to you to tell the truth? A. Yes, I tried to make it look— Q. How did you happen to be telling all those lies on this particular case? A. I did not know what to say. Everyone was firing questions at me. Q. When people ask you questions, is it your custom to lie? A. No, it hasn't been. Q. This was just a special time, at

that particular time you concluded to lie part of the time? A. I did not know what to say. Q. Didn't it ever occur to you to tell the truth? A. I told the truth as much as I knew about it. Q. That is all I wanted to ask you." The statements made by the court and the questions asked were not proper. In *Quercia* v. *United States*, 289 U. S. 466 [53 Sup. Ct. 698, 77 L. Ed. 1321], the court gave the following charge to the jury: "And now I am going to tell you what I think of the defendant's testimony. You may have noticed, Mr. Foreman and gentlemen, that he wiped his hands during the testimony. It is rather a curious thing, but that is almost always an indication of lying. Why it should be so, we don't know, but that is the fact. I think that every single word that man said, except when he agreed with the Government's testimony, was a lie." In reversing the judgment the court, speaking through Chief Justice Hughes, said: "His characterization of the manner and testimony of the accused was of a sort most likely to remain firmly lodged in the memory of the jury and to excite a prejudice which would preclude a fair and dispassionate consideration of the evidence." The court in that case held that the error of the trial judge was not cured by his statement that "his opinion of the evidence was not binding on the jury". However, in view of the nature of the entire testimony of the witness, who admitted that he had falsified in his statements to the officers, and in view of all of the evidence in the case, we cannot say that the error resulted in a miscarriage of justice and that it calls for a reversal of the judgment.

During the trial Officer Conner gave testimony as to the alleged confession of Rasmussen and in giving this testimony he stated that he (Rasmussen) had told him that he knew defendant Ryan and that he (Ryan) "was a loser from Detroit". Later in the trial Rasmussen's attorney sought to ask him whether he had been convicted of a felony. An objection to this testimony was sustained on the ground that defendant could not impeach his own witness. The court had admonished the jury that the testimony concerning the alleged confession of Rasmussen was being received only as against the defendant Rasmussen. Although the court might with propriety have permitted Ryan to efface from the minds of the jury any wrongful impression

they may have received from the reference to him in the testimony as "a loser from Detroit", it cannot be said that any legal error was committed in the refusal of the court to admit the testimony.

Further complaint is made that the court gave certain instructions requested by the prosecution which are alleged to be prejudicial and refused to give other instructions in favor of the defendants. We find no error in this regard.

The judgments and orders appealed from are affirmed.

Crail, P. J., and Gould, J., *pro tem.*, concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 13, 1935. Curtis, J., voted for a hearing.