[Crim. No. 4876. In Bank. Oct. 1, 1948.]

THE PEOPLE, Respondent, v. MORTON WALLIN, Appellant.

Goldstein, Barceloux & Goldstein, J. Oscar Goldstein, Jack J. Miller and Miller & Kroloff for Appellant.

Fred N. Howser, Attorney General, Leonard M. Friedman, Deputy Attorney General, and Chester E. Watson, District Attorney, for Respondent.

GIBSON, C. J.—Defendant appeals from a judgment of conviction, under section 32 of the Penal Code, of the crime of being an accessory to murder, and from an order denying his motion for a new trial.

The evidence consisted largely of the testimony of Mrs. Jeanette Paz, the confessed murderer, whom defendant is charged with having aided in disposing of the body of the victim, the 4-year-old spastic daughter of Mrs. Paz. In-

structions that Mrs. Paz was an accomplice of defendant and that her testimony required corroboration were requested and denied, and the primary contention on appeal is that this constituted prejudicial error.

Mrs. Paz testified that she had thought for several years that the child "would be better off dead" because of its infirmity and on many occasions had talked, with "anyone that would listen," about the advisability of doing away with it. She became acquainted with defendant about August 21, 1946, when she obtained a position as clerk in a hotel operated by him. According to her testimony she talked to defendant about the child a number of times, and he agreed that she was right in thinking it would be better off dead. They discussed killing the child by poisoning and drowning, and disposing of the body by cremation and burial. Early in September, 1946, Mrs. Paz attempted to get someone to take care of the child who was then living with her relatives, but defendant discouraged her saying "our way is best." On the evening of September 11, Mrs. Paz strangled the child in her room in the hotel. She testified that she then called defendant at a cafe where he was dining, told him what she had done, and asked him to come to the hotel. He said that he would, but he did not come until she telephoned him a second time. Mrs. Paz was crying when he arrived at the hotel, and she asked him to help her. They discussed plans for disposing of the body and arranged that she should take it to an appointed place near the hotel. According to the plan he met her there and drove to an isolated place where together they dug a grave and buried the body.

The telephone operator at the hotel testified that on the evening of September 11, she overheard the following portions of a conversation between Mrs. Paz and defendant. Mrs. Paz said, "I don't know why you don't come over. I need you. You can imagine how I feel, Morton." Defendant said, "I think you are foolish to start anything now," to which she replied, "It is too late now, it is already done." Defendant then said, "What are you going to do now? Are you going to do what you [or we] planned?" (The witness was not sure whether defendant said "you" or "we.") Mrs. Paz said, "No, I have something better than that; I will tell you when you get here."

A laboratory test showed that the earth surrounding the grave was similar to that found on tools in defendant's automobile, and there was also evidence that large foot and

hand prints were discovered at the grave, although none was identified as being that of defendant. Shortly after the crime was discovered, defendant stated that it was his custom to wash his car two or three times a week, and that he had washed it, including the interior, on the day after the murder. He also stated that he had lent the car to Mrs. Paz on the night of the crime to be used for a purpose unknown to him. This statement conforms to declarations made by Mrs. Paz at the time of her arrest and on several occasions thereafter, in which she asserted that she had borrowed defendant's car and had used it to dispose of the child's body.

Section 1111 of the Penal Code provides that "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated" and defines an accomplice as "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." The question is whether Mrs. Paz, by aiding and encouraging defendant to assist her in disposing of the child's body, became liable to prosecution for the identical offense charged against him.

Section 32 of the Penal Code under which defendant is charged provides: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony." Section 31 provides: "All persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed." Section 32 is supplemented by section 31, and any person who has advised or encouraged another to aid a felon is guilty of the crime of being an accessory.

Respondent argues, however, that Mrs. Paz could not be an accessory after the fact to her crime and that therefore she was incapable of committing the offense with which defendant stands charged. It may be that a murderer who acts alone in concealing her crime cannot be separately charged as an accessory, but it does not follow that she cannot become liable as such if she encourages another to aid her in avoiding arrest and punishment. There are many instances

in the law where a person is held to be criminally responsible for cooperating in an offense which he is incapable of committing alone. (See 131 A.L.R. 1322.) For example, in *People* v. *Young,* 132 Cal.App. 770 [23 P.2d 524], it was held that a woman could be lawfully convicted of pimping although the statute (Stats. 1911, p. 10) restricted the offense to a *male person* who derived his support in whole or part from the earnings of a prostitute. It is obvious that a woman could not by herself violate the act, but the court held that she was chargeable by reason of section 31 of the Penal Code if she assisted in the commission of the offense. It has also been held that a woman who aids a rapist may be charged with rape (*People* v. *Bartol,* 24 Cal.App. 659 [142 P. 510]), and that a husband who assists another to commit the act may be charged with the rape of his wife (*In re Kantrowitz,* 24 Cal.App. 203 [140 P. 1078]). Thus it is clear that a person who is not independently capable of committing an offense can, by aiding, abetting, advising or encouraging another to commit the crime, be made liable to prosecution as a principal in such offense by reason of section 31.

The murder was completed as soon as the child was killed, and no subsequent acts on the part of Mrs. Paz or any other person were required to be shown in order to establish the elements of that offense. Defendant's crime of being an accessory under section 32 was separate and distinct (see Pen. Code § 972), although it, of course, depended on the previous commission of the murder. He became chargeable under section 32 when he aided Mrs. Paz to conceal her crime, and she became liable to prosecution for the identical offense by reason of section 31 when she encouraged him to assist her in avoiding arrest and punishment.

An analogous situation was presented in *People* v. *Lima,* 25 Cal.2d 573 [154 P.2d 698], where the defendant Lima was charged with receiving stolen property, and the thieves testified that there was a prearranged plan that they should steal the goods and that Lima should receive them. It was recognized that a thief and a receiver are generally said to be guilty of different offenses, but since the testimony of the thieves in that case showed that they aided and abetted Lima in receiving the stolen goods, it was held that the thieves also were liable to prosecution for that offense by reason of section 31 of the Penal Code, and that they were therefore accomplices. There is an added similarity between the two cases in that the testimony of Mrs. Paz showed that

she and defendant discussed plans for disposing of the body before the murder was committed. *People* v. *Clapp,* 24 Cal. 2d 835 [151 P.2d 237], relied on by respondent, is distinguished in the Lima case (25 Cal.2d at p. 579), and the distinction there made is equally applicable here.

The legal character of the relationship of Mrs. Paz to defendant and the latter's crime, with respect to the requirement of corroboration, is not affected by the fact that she had been convicted of murder before she testified. The test is not whether she was subject to trial and conviction *at the time she testified,* but whether, *at the time the acts were committed,* and as a result of those acts, she became "liable to prosecution for the identical offense charged against the defendant." If this were not true, then a witness who had previously been convicted, either of the same or of an included offense, could never be considered an accomplice in a subsequent trial arising out of the same transaction. Of course it is unlikely that a prosecutor would choose to charge a killer with the lesser offense of aiding another to conceal the murder, but the fact that this would rarely, if ever, occur is not determinative of our question and is immaterial insofar as the accomplice rule is concerned. In this connection we must keep in mind the reasons for the enactment of section 1111 of the Penal Code requiring corroboration of accomplices and the purpose of the 1915 amendment to that section restricting the application of the rule to persons who are liable to prosecution for the identical offense.

The statutory requirement of corroboration is based primarily upon the fact that experience has shown that the evidence of an accomplice should be viewed with care, caution and suspicion because it comes from a tainted source and is often given in the hope or expectation of leniency or immunity. (*People* v. *Coffey,* 161 Cal. 433, 438 [119 P. 901, 39 L.R.A.N.S. 704].) Before 1915 there was no statutory definition of an accomplice in this state, and it was held that anyone "who knowingly and voluntarily cooperates with or aids or assists or advices or encourages another in the commission of a crime is an accomplice, without regard to the degree of his guilt." (*People* v. *Coffey,* 161 Cal. 433, 439-440 [119 P. 901, 39 L.R.A.N.S. 704].) The courts experienced some difficulty in the application of this definition, and they began to make arbitrary exceptions of participants who might be characterized as victims, such as women kept in houses of prostitution or transported in violation of the

Mann Act. This led in some states to the adoption of a rule similar to that set forth in the 1915 amendment restricting accomplices to those liable to prosecution for the identical offense charged against defendant. (*State* v. *Coffey*, 157 Ore. 457 [72 P.2d 35, 38-39].) When the reasons for the requirement of corroboration are considered together with the purpose of the restricted definition of accomplices, it is clear that we should not refuse to treat one who has committed a murder as an accomplice of one who aided her in concealing the crime merely because it is unlikely that a murderer would ever be charged as an accessory.

 . Mrs. Paz became liable to prosecution for the separate offense of being an accessory as the result of her additional acts in encouraging and aiding defendant to commit the offense charged against him. She was therefore his accomplice, and the court erred in refusing to instruct the jury that her testimony required corroboration. Although there was evidence which, if believed, was corroborative of the testimony of Mrs. Paz, defendant was clearly prejudiced by the refusal to give the requested instructions, since the jury in considering the credibility of witnesses may have rejected the corroborative evidence leaving the testimony of the accomplice to stand alone. (23 C.J.S., Crim. Law, § 1228, p. 792.)

The judgment and the order denying a new trial are reversed.

Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—I disagree with the reasoning of the majority opinion which is based upon what I believe to be an incorrect interpretation of section 1111 of the Penal Code, as amended in 1915. That section defines an accomplice as ''one who *is* liable to prosecution for the identical offense charged against the defendant on trial *in the cause in which the testimony of the accomplice is given.*'' (Emphasis added.) This language is clear and unequivocal. Section 7 of the same code declares: ''Words used in this code in the present tense include the future as well as the present.'' In view of these statutes, the decisive question presented for decision is: At the time she testified, or at any time after the grand jury indicted Wallin, was Mrs. Paz liable to prosecution for the identical offense charged against him?

Contrary to the clear language of the statute, the majority opinion states: ''The test is not whether she was subject to trial and conviction *at the time she testified,* but whether, *at the time the acts were committed,* and as a result of those acts, she became 'liable to prosecution for the identical offense charged against the defendant.' '' It will be noted that in arriving at this ''test'' the majority opinion quotes from section 1111 immediately after, and to the exclusion of, the word ''is,'' and does not include the phrase ''in the cause in which the testimony of the accomplice is given.'' The statute with these omissions is not the legislative enactment which this court is required to apply.

No authority is cited for the ''test'' stated in the majority opinion. All that is said is that ''[i]f this were not true, then a witness who had previously been convicted, either of the same or of an included offense, could never be considered an accomplice in a subsequent trial arising out of the same transaction.'' This statement can only mean that, under the facts of this case, as a matter of law, Mrs. Paz was an accomplice of Wallin, a conclusion which is not compelled by the statute. Since the 1915 amendment of it, 223 cases have been decided by the appellate courts in which its application has been considered. In only two of them, *People* v. *Norris,* 133 Cal.App. 606 [24 P.2d 561], and *People* v. *Linde,* 131 Cal. App. 12 [20 P.2d 704], had a person charged with being an accomplice been convicted at the time the action was commenced. In each of these cases, the People conceded that the witness was an accomplice and the court was not called upon to decide the question of his status.

The other cases may be factually classified into two major groups. The first and largest group of them concern the usual situation in which the evidence shows a crime committed by two persons, only one of whom is prosecuted, the other offender testifying for the state. Normally, at that time, by his own testimony the witness is subject to prosecution for the same crime which he describes. (See, for example, *People* v. *Lima,* 25 Cal.2d 573 [154 P.2d 698] ; *People* v. *Menne,* 4 Cal.App.2d 91 [41 P.2d 383].) The second major group of cases concern an action commenced against several persons with a later dismissal as to one of them (see *People* v. *Dail,* 22 Cal.2d 642 [140 P.2d 828] ; *People* v. *Earl,* 10 Cal.App.2d 163 [51 P.2d 147] ; *People* v. *Hobson,* 7 Cal.App.2d 392 [46 P.2d 278]), or where one defendant pleads guilty and is

placed on probation or the time of sentence is deferred (see *People* v. *Lisenba*, 14 Cal.2d 403 [94 P.2d 569]; *People* v. *Allison*, 200 Cal. 404 [253 P. 318]).

In any of these circumstances, the accomplice's self-interest is the basis for the requirement for corroboration of his accusations against the person on trial. "The reasons which have led to this distrust of an accomplice's testimony," says Dean Wigmore, "are not far to seek. He may expect to save himself from punishment by procuring the conviction of others. . . . The essential element . . . it must be remembered, is this supposed promise or expectation of clemency. If that is lacking, the whole basis of distrust fails." (VII Wigmore on Evidence, § 2057, p. 322.)

But at the time of Wallin's trial, Mrs. Paz had been tried and convicted of murder and was serving the sentence prescribed by law. She was then not subject to prosecution as an accessory to the crime of murder, having already been convicted as a principal, and the driving force which compels corroboration of testimony under section 1111 no longer existed.

Possibly, under certain circumstances, a person may be prosecuted as either a principal or an accessory, but he cannot be charged as both principal and accessory. Section 30 of the Penal Code classifies "parties to crimes" as principals and accessories. Section 31 further states, "All persons concerned in the commission of *a* crime" in certain specified ways are "principals in *any* crime so committed." Section 32 provides: "Every person who" aids one in escape from arrest "is an accessory to *such* felony." (Emphasis added.) These statutes do not create or enumerate separate and distinct substantive crimes; they do no more than to define the parties to any given substantive crime. Herein lies the primary distinction which should be made between the present case and *People* v. *Lima, supra*. Lima was prosecuted for receiving stolen goods, and the accomplice-witnesses were the ones who stole the property. The crimes of theft and receiving stolen goods have always been considered as separate substantive crimes, and dual prosecutions of the same person for both of them has long been allowed. (See 2 Wharton, Criminal Law, § 1234, p. 1551, citing an 1847 case of *State* v. *Coppenburg*, 33 S.C.L. (2 Strob.) 273.) Yet no court has affirmed the conviction of the same person as both principal and accessory after the fact to a single substantive

crime, and there is authority directly to the contrary. (*Regina v. Brannon,* 14 Cox C.C. 394; *Crosby* v. *State,* 179 Miss. 149 [175 So. 180] and cases cited therein.)

To say the least, the rule of the majority opinion that the phrase "is liable to prosecution" means "at the time the acts were committed" and not "at the time she testified," is an extremely liberal construction of section 1111. In *People* v. *Coffey* (1911), 161 Cal. 433 [119 P. 901, 39 L.R.A. N.S. 704], this court held that anyone connected with a crime was an accomplice. As a direct answer to the Coffey case, in 1915, the Legislature placed in the statute the present restricted definition. The majority opinion broadens the. requirement which was narrowed by legislative action.

For these reasons I would affirm the judgment.

Respondent's petition for a rehearing was denied October 28, 1948. Edmonds, J., voted for a rehearing.