[No. A117235. First Dist., Div. Four. Nov. 20, 2007.]

In re CHRISTOPHER B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER B., Defendant and Appellant.

## Counsel

Sara Zimmerman for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Jeffrey M. Bryant, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**REARDON, J.**—In a proceeding on a subsequent petition alleging that the court's ward committed residential burglary and vandalism, the sole evidence implicating the minor was the uncorroborated testimony of an accomplice. The juvenile court denied the defense motion to dismiss the case due to insufficient evidence, on authority of *In re Mitchell P.* (1978) 22 Cal.3d 946 [151 Cal.Rptr. 330, 587 P.2d 1144] (*Mitchell P.*). The *Mitchell P.* court held that Penal Code section 1111, prohibiting a conviction upon the testimony of an accomplice unless the testimony is corroborated by other evidence tending to connect the defendant with the commission of the offense, does not apply to juvenile court proceedings (*Mitchell P., supra,* at p. 949). We affirm the jurisdictional order, as we must. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Nevertheless, as we explain, with the passage of nearly 30 years and attendant significant changes in juvenile law, the rule of *Mitchell P.* is well positioned for reassessment.

## I. BACKGROUND

Michelle Crawford returned home from work around 5:30 p.m. on December 14, 2006. She noticed that a piece of one of the blinds in the living room had been broken off, a lamp was leaning over the couch and a window had been broken by a basketball-size piece of cement.

Crawford's bedroom had been ransacked. Missing were two gold bracelets, an Xbox 360, a cell phone, compact discs and a PSP (play station portable).

Ten-year-old Fiona, a next-door neighbor, looked out her bedroom window around 3:00 that afternoon. She saw three African-American teenagers—two males and one female. One youth was Brice M., the brother of a friend. Fiona heard a crash that sounded like a broken window, coming from the ground floor of the Crawford home. She saw the girl standing in front of the Crawford home. Brice and the other youth were in the street.

Brice had befriended Mrs. Crawford's son, who is legally blind. Brice had been to their home once or twice a week to download music.

On December 15, 2006, the Solano County District Attorney filed a subsequent petition under Welfare and Institutions Code[1] section 602, subdivision (a), charging appellant Christopher B. with residential burglary and vandalism. Accompanying the petition, for the court file alone, was a list of two additional juveniles responsible for the offenses, including Brice M.

Prior to testifying at appellant's contested jurisdictional hearing, Brice had admitted the burglary and his wardship proceeding had progressed through the dispositional hearing. At the hearing Brice testified that no deals had been made in exchange for his testimony. Brice initially told the police he had no involvement with the burglary, but had seen Christopher with the stolen goods and put the entire blame on him. Finally, after a police officer told him there was a witness who identified him at the scene, Brice admitted his involvement, but still tried to shift most of the blame to Christopher. Brice also admitted that in November 2006 he had stolen two iPods from the same residence and sold one at school. The grand theft and vandalism charges were dropped. As a result of his admission, Brice was released from custody.

Brice further testified that he burglarized the Crawford home after school with Christopher and Shontanae H. When they arrived, Christopher went into the backyard. Brice heard a crash. They all ran away, returning five to 10

---

[1] Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

minutes later. Shontanae entered through the broken window and let the boys inside. Brice took the PSP and a cell phone; Christopher took the Xbox and a piggy bank. Brice threw the cell phone over a fence.

The PSP was found at Brice's home; the Xbox was recovered from Shontanae. Nothing was found at Christopher's home or on his person.

Appellant's neighbor testified that appellant normally came to her home every day after school until his stepfather came to pick him up. The time would vary between 3:30 and 6:00 p.m., depending on whether he had football practice, etc. On December 14, 2006, appellant came over around 5:00 p.m., said he was not feeling well and lay down on the floor.

At the close of evidence, counsel for Christopher moved to dismiss for insufficient evidence, arguing that the only testimony implicating his client was "that of an unreliable accomplice witness." Denying the motion, the court cited *Mitchell P.* to the effect that the Penal Code section 1111 limitation on the use of accomplice testimony is not controlling in juvenile court. The court also stated that Brice's testimony had been corroborated, pointing to Fiona's observation of three individuals "standing around the house, one of which she identifies as Mr. Brice M[.], the race of the individuals, being African-American, the minor here obviously being African-American is consistent with another male subject out there, and then Mr. M[.'s] testimony that he stole and kept the PSP, threw the cell phone over the fence. The officer found those things, as Mr. M[.] testified."[2]

This appeal followed.

## II. DISCUSSION

### A. *Legal Framework*

 Penal Code section 1111 provides: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other

---

[2] The People argue that these factors articulated by the juvenile court, plus the fact that Christopher did not arrive at the home of his neighbor until 5:00 p.m., constitute adequate corroboration. We disagree. Corroborating evidence that satisfies Penal Code section 1111 "must tend to implicate the defendant by relating to an act that is an element of the crime. The corroborating evidence need not by itself establish every element of the crime, but it must, without aid from the accomplice's testimony, tend to connect the defendant with the crime." (*People v. McDermott* (2002) 28 Cal.4th 946, 986 [123 Cal.Rptr.2d 654, 51 P.3d 874].) Surely the nonincriminating evidence that Christopher is African-American, and an African-American male teenager was at the scene with Brice, cannot implicate Christopher B. in the burglary or tend to connect him to that crime. A mere racial match, without more, is not of evidentiary value. Moreover, Christopher's 5:00 p.m. arrival at his neighbor's home was not out of the ordinary. He would arrive between 3:30 and 6:00 p.m.—the time varied. Nor does the absence of an alibi amount to corroboration.

evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." This cautionary rule has its roots in "the fact that experience has shown that the evidence of an accomplice should be viewed with care, caution and suspicion because it comes from a tainted source and is often given in the hope or expectation of leniency or immunity." (*People v. Wallin* (1948) 32 Cal.2d 803, 808 [197 P.2d 734].) A coperpetrator has a natural incentive to shift blame to the accused in hopes of minimizing his or her own culpability. (*People v. Tobias* (2001) 25 Cal.4th 327, 331 [106 Cal.Rptr.2d 80, 21 P.3d 758]; *People v. Lewis* (2004) 120 Cal.App.4th 837, 848–849 [15 Cal.Rptr.3d 891].) This may be especially true where the accomplice is a minor, as a minor " 'may be under great parental or social pressure' " to testify and blame certain conduct on the accused. (*In re Miguel L.* (1982) 32 Cal.3d 100, 109 [185 Cal.Rptr. 120, 649 P.2d 703].) Additionally, accomplice testimony frequently is cloaked with plausibility because the accomplice has firsthand knowledge of the facts of the crime and can weave a convincing story. (*People v. Tewksbury* (1976) 15 Cal.3d 953, 967 [127 Cal.Rptr. 135, 544 P.2d 1335].) Indeed with the enactment of Penal Code section 1111, accomplice testimony "has been legislatively determined never to be sufficiently trustworthy to establish guilt beyond a reasonable doubt unless corroborated." (*People v. Tewksbury, supra,* at p. 967.)

Notwithstanding the acclaim that the accomplice corroboration rule has received in our case law, as well as the significant benefit afforded a criminal defendant by virtue of its application in a given case, nearly 30 years ago our Supreme Court refused to apply the rule to juvenile adjudications. (*Mitchell P., supra,* 22 Cal.3d 946.) The court initially, and mechanically, held that Penal Code section 1111 did not pertain to juvenile adjudications because a finding of wardship does not constitute a "conviction" within the meaning of the statute.[3] (*Mitchell P., supra,* at p. 949.) In other words, the

---

[3] This very literal interpretation hews to the sanctity of formal labels rather than an interpretation emphasizing the intent of the statute in light of the consequences and nature of juvenile proceedings. Indeed, more recent case law has recognized that statutes using adult procedural terms can be compatible with their juvenile court counterparts. (See, e.g., *City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 53 [19 Cal.Rptr.2d 73, 850 P.2d 621], holding that Evid. Code, § 1045, subd. (b)(2), which protects the confidentiality of peace officer personnel records from disclosure in adult criminal proceedings, also applies to juvenile court proceedings; *In re Jovan B.* (1993) 6 Cal.4th 801, 814 [25 Cal.Rptr.2d 428, 863 P.2d 673], explaining that the term "conviction" as used in Pen. Code, § 12022.1 [bail/own recognizance enhancement] "appears to have no special technical significance for the enhancement and seems attributable simply to the adult terminology employed throughout the [Determinate Sentencing Act] enhancement scheme. . . . [Citations.] . . . [S]ection 12022.1's requirement of 'conviction' for the earlier 'bailed' offense appears principally intended to establish with judicial certainty that the charges leading to release on bail or [own recognizance] were valid.")

Legislature's choice of the word "conviction" demonstrated an intent to create two classes of defendants—adults subjected to conviction in criminal court who would benefit from the rule, and juveniles subjected to wardship adjudication in juvenile court, who would not.

Additionally, the court rejected the minor's equal protection challenge, framing the issue as whether the state could require a lesser *quality* of evidence—which it distinguished from the required *degree of proof*—in juvenile proceedings. (*Mitchell P., supra*, 22 Cal.3d at p. 950.) Employing the rational basis test, the Supreme Court reasoned that disparate treatment with respect to the quality of evidence in adult and juvenile settings was reasonably related to the rehabilitative purpose served by the juvenile court. Specifically, it posited that the Legislature could consider that judicial intervention to rehabilitate an impressionable youth may outweigh the policy against the use of uncorroborated testimony. (*Id.* at p. 952.) Also persuasive was the assumption that a judge sitting as trier of fact would be more likely than a jury to accord accomplice testimony its appropriate weight. (*Id.* at p. 951.) Finally, the court also observed: "[I]t must be acknowledged that a person convicted of a serious crime is generally exposed to a greater and more onerous term of confinement than a juvenile ward charged with the same misconduct." (*Id.* at p. 952.) The dissenting opinion emphasized that because a minor's guilt must be established beyond a reasonable doubt, the purpose and intent expressed in Penal Code section 1111 applied equally to juvenile proceedings. (*Mitchell P., supra*, at p. 956 (dis. opn. of Bird, C. J.).)

In 1985 the Fifth District Court of Appeal affirmed a wardship adjudication where the only evidence directly connecting the minor with the crime was uncorroborated accomplice testimony, relying on *Mitchell P.*, but highlighting its weak points. (*In re E.L.B.* (1985) 172 Cal.App.3d 780, 785 [218 Cal.Rptr. 429].) The court reviewed numerous legislative changes that had occurred in laws governing juveniles in the intervening eight years since *Mitchell P.* was handed down, concluding that "the present juvenile adjudication hearing is a far cry from former closed proceedings where a judge was briefed of the charges, and proceeded to question the parents and child in a personal and casual fashion. The accomplice corroboration rule would add little to any stigma attached to the complicated network of juvenile proceedings. On the contrary, application of the rule would offer more protection by ensuring that each proceeding affords fairness to the juvenile." (*In re E.L.B., supra*, at p. 785.) Underscoring the tension between the imperative that the minor's guilt be established beyond a reasonable doubt (§ 701; *In re Winship* (1970) 397 U.S. 358, 362 [25 L.Ed.2d 368, 90 S.Ct. 1068]) and the holding of *Tewksbury* that Penal Code section 1111 is a legislative determination that accomplice testimony is never sufficiently trustworthy to establish such guilt

unless corroborated, the court remarked that "[t]he contradictions are obvious" (*In re E.L.B., supra,* 172 Cal.App.3d at p. 787; see *People v. Tewksbury, supra,* 15 Cal.3d at p. 967).

Despite its criticism of *Mitchell P.,* the court in *In re E.L.B.* affirmed because, under *Mitchell P.,* accomplice testimony need not be corroborated. (*In re E.L.B., supra,* 172 Cal.App.3d at p. 787.) Similarly, appellant recognizes that this court cannot overrule *Mitchell P.* and therefore, following *Auto Equity Sales, Inc. v. Superior Court, supra,* 57 Cal.2d 450, we must affirm the jurisdictional order. However, in the quest to preserve the issue for Supreme Court review, appellant urges that *Mitchell P.* is no longer good law "in light of the significant changes in the nature and import of juvenile delinquency adjudication" that have occurred since that case was decided.

## B. *Transformation of Juvenile Court Jurisprudence*

We agree that in the intervening years there has been an appreciable transformation of juvenile court jurisprudence both in terms of its purpose as well as the consequences attendant to a wardship adjudication. This transformation undermines the rationale of *Mitchell P.*

### 1. *Purpose*

Prior to the 1984 amendment to section 202, courts consistently held that juvenile commitment proceedings were " 'designed for the purposes of rehabilitation and treatment, not punishment.' " (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1396 [234 Cal.Rptr. 103], quoting *In re Aline D.* (1975) 14 Cal.3d 557, 567 [121 Cal.Rptr. 816, 536 P.2d 65].) A commitment to the Department of Youth Authority (YA) (now Department of Corrections and Rehabilitation, Division of Juvenile Justice (DCRJJ))[4] was a "placement of last resort." (*In re Michael D., supra,* at p. 1396.)

In 1984 the Legislature repealed former section 202 and replaced it with language emphasizing the protection and safety of the public, and recognizing punishment as a form of guidance that holds the minor accountable for his or her behavior. (Stats. 1984, ch. 756, §§ 1, 2, pp. 2726–2727; § 202, subds. (a), (b).)[5] As summarized by the *In re Michael D.* court: "Thus, it is clear that the

---

[4] Section 1710, subdivision (a); Government Code sections 12838, 12838.5.

[5] For example, the purpose of juvenile court law is now expressed as providing "for the protection and safety of the public and each minor . . . , removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public." (§ 202, subd. (a).) Further, "[m]inors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest,

Legislature intended to place greater emphasis on punishment for rehabilitative purposes and on a restrictive commitment as a means of protecting the public safety." (*In re Michael D., supra*, 188 Cal.App.3d at p. 1396.) In turn, case law has relied on the new directive of protecting the public to uphold more stringent dispositions. (See, e.g., *In re Asean D.* (1993) 14 Cal.App.4th 467, 473 [17 Cal.Rptr.2d 572] [upholding YA commitment in first instance, without resort to less restrictive alternatives]; *In re Domanic B.* (1994) 23 Cal.App.4th 366, 373 [28 Cal.Rptr.2d 439] [imposing stayed YA commitment as functional equivalent of probationary term].)

### 2. Consequences

One of the far reaching changes in juvenile court law occurring since publication of *Mitchell P.* is the inclusion of certain prior juvenile adjudications within the ambit of the "Three Strikes" law. Thus, a juvenile adjudication counts as a prior felony conviction or strike where the juvenile committed an identified serious or violent felony when 16 years of age or older, was adjudged a ward for that offense, and was found to be a "fit and proper subject to be dealt with under juvenile court law." (Pen. Code, §§ 667, subd. (d)(3)(A), (C), 1170.12, subd. (b)(3).) A convicted adult felon could face a sentence double the term for the current offense with one qualifying prior juvenile adjudication, and up to life for a second. (*Id.*, § 667, subd. (e).)

Moreover, under our determinate sentencing law (DSL),[6] in exercising its discretion to select one of the three authorized prison terms specified for a particular offense, the trial court may consider circumstances in aggravation, including the fact that the defendant's prior "sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness." (Cal. Rules of Court,[7] rule 4.421(b)(2); see Pen. Code, § 1170, subd. (b); rule 4.420(b).) Thus, the trial court may impose an upper term sentence based on a record of juvenile adjudications matching the qualities listed in rule 4.421(b)(2).

The DSL also sets the outer maximum period of physical confinement[8] for minors who have committed a felony and are ordered removed from their

---

that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter." (*Id.*, subd. (b).)

[6] Enacted in 1976, the DSL became effective July 1, 1977. (Stats. 1976, ch. 1139, § 273, p. 5140.) It is highly unlikely that the DSL was in effect when Mitchell P. was adjudicated a ward. In any event, the DSL was not mentioned or acknowledged in the *Mitchell P.* opinion.

[7] All references to rules are to the California Rules of Court.

[8] The term " '[p]hysical confinement' means placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home pursuant to Section 730, or in any institution operated by the Youth Authority." (§ 726, subd. (c).)

parents or guardians. That period is the maximum term of imprisonment which could be imposed on an adult who committed the same offense. For a single offense the period is the upper DSL term, determined without the need to consider aggravating or mitigating factors or time for good behavior or participation, plus enhancements, if pled and proven. (§ 726, subd. (c); see § 731, subd. (b).) The juvenile court may also aggregate the period of physical or DCRJJ confinement for multiple petitions or counts, including previously sustained petitions, in which case the maximum period of physical confinement is calculated under the formula for consecutive sentences detailed in Penal Code section 1170.1, subdivision (a), including its direction on how to include enhancements in the aggregate term. (§ 726, subd. (c).) As summarized in *In re Jovan B.*, *supra*, 6 Cal.4th at page 811, the DSL "provides in detail for the enhancement of adult sentences when specified circumstances of an offense, or of the offender's record, suggest that a longer period of confinement is warranted. Welfare and Institutions Code section 726 expressly adopts this system of enhancements for purposes of computing a juvenile ward's maximum confinement or commitment." While all minors do not serve their maximum terms,[9] the maximum term of confinement may affect parole eligibility and the extent to which confinement may be prolonged due to disciplinary action. (*In re Jovan B.*, at p. 811.)

Additionally, in 2000 the voters approved Proposition 21, the Gang Violence and Juvenile Crime Prevention Act, an initiative measure which further narrowed the gap between the criminal and juvenile justice systems in a number of important ways. Historically, a minor could be tried as an adult only upon a juvenile court adjudication of unfitness for that court's jurisdiction. With Proposition 21, minors who are accused of committing murder under specified circumstances and certain sex offenses when age 14 or older are subject to mandatory prosecution "under the general law in a court of criminal jurisdiction," without a finding of unfitness. (§ 602, subd. (b).) As well, Proposition 21 broadened the circumstances in which prosecutors have discretion to file charges directly in criminal court against minors age 14 and older, again without a prior adjudication of unfitness. (§ 707, subd. (d)(2).) Further, a rebuttable presumption of unfitness for minors alleged to have

---

[9] As reflected in Department of Corrections and Rehabilitation fact sheets for 2007, the average stay for wards is 21.9 months while the average time served for adult offenders is 23.6 months. (<http://www.cdcr.ca.gov/Reports_Research/summarys.html> [wards]; <http://www.cdcr.ca.gov/Divisions_Boards/Adult_Operations/Facts_and_Figures.html> [as of Nov. 20, 2007] [adults].) Although these figures are of limited probative value because they are not broken down by offense, that the difference between the two is a scant 1.7 months broadly suggests that the punitive turn in juvenile court law and its adoption of the DSL's sentencing and enhancement scheme has brought juvenile and adult dispositions closer together. Thus the supposition in *Mitchell P.* that adults suffer greater and more onerous terms of confinement for the same offense than do minors may be ripe for reevaluation. (See *Mitchell P.*, *supra*, 22 Cal.3d at p. 953.)

committed any of 30 enumerated serious offenses now applies to minors 14 years of age at the time of violation, lowered from age 16. (§ 707, subds. (b), (c).)

In addition, the ramifications of prior violent conduct underlying a juvenile adjudication can now be used in the penalty phase of a capital murder trial. (*People v. Cox* (1991) 53 Cal.3d 618, 688–690 [280 Cal.Rptr. 692, 809 P.2d 351] [holding that evidence of conduct underlying two robberies adjudicated when defendant was age 15 came within purview of Pen. Code, § 190.3, subd. (b), which provides that past criminal conduct involving force or violence can be considered by trier of fact when deciding whether to impose death penalty or sentence of life imprisonment without possibility of parole].)

### 3. *Other Jurisdictions*

Other state courts have considered extending the accomplice corroboration rule to juvenile adjudications with the prevailing trend favoring its applicability. For example, the Maryland high court recently ruled that the common law rule applied to juvenile cases: "Because the standard of proof beyond a reasonable doubt in juvenile cases is the same standard applied in adult criminal cases, the same concerns regarding the potentially untrustworthy nature of an accomplice's testimony in adult criminal proceedings . . . are also present in juvenile cases. . . . '[A] juvenile faced with the possibility of removal from his home and placement in some state facility for rehabilitation or treatment is no less entitled to the benefit of the accomplice-corroboration rule than an adult faced with possible incarceration for committing an identical offense.' " (*In re Anthony W.* (2005) 388 Md. 251 [879 A.2d 717, 729]; accord, *In Interest of B.S.* (N.D. 1993) 496 N.W.2d 31, 34 [admissible corroborative evidence required to constitute clear and convincing evidence of delinquency]; *In Interest of Dugan* (Iowa 1983) 334 N.W.2d 300, 304 [corroboration rule necessary to ensure that juvenile proceedings comport with essentials of fair treatment and due process]; *A Minor v. Juvenile Department* (1980) 96 Nev. 332 [608 P.2d 509, 510] [choosing not to interpret language in Nevada statute forbidding "convictions" upon uncorroborated accomplice testimony in mechanical fashion, and underscoring that juvenile adjudications require proof beyond reasonable doubt based on competent, relevant and material evidence]; *In the Matter of D.W.L.* (1980) 189 Mont. 267 [615 P.2d 887, 890] [applying corroboration statute to juvenile proceeding]; *Matter of Welfare of K. A. Z.* (Minn. 1978) 266 N.W.2d 167, 169–170 [pertinent statute applies in juvenile cases because it is required to restore confidence in naturally suspect accomplice testimony, thereby confirming its truth]; *T. L. T. v. State* (1975) 133 Ga.App. 895 [212 S.E.2d 650, 654–655] [rule necessary to ensure accused minor has fair trial]; *Smith v. State*

(1974) 1974 OKCR 143 [525 P.2d 1251, 1253–1254] [as matter of policy, accomplice testimony must be corroborated in juvenile adjudications in order to preserve integrity of evidence]; but see *Munhall v. State* (1999) 337 Ark. 41 [986 S.W.2d 863, 864] [construing applicable statute as pertaining only to adults, and registering *Mitchell P.* as persuasive authority].)

## III. DISPOSITION

The juvenile court sustained a subsequent petition against its ward, appellant Christopher B., based solely on accomplice Brice's uncorroborated testimony. Because his testimony need not be corroborated, we affirm the jurisdictional order. (*Mitchell P.*, *supra*, 22 Cal.3d at p. 949.) For all the reasons set forth above, we concur with appellant that *Mitchell P.* warrants reevaluation.

Ruvolo, P. J., and Rivera, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 12, 2008, S159450. Moreno, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.